### WHALEY v MORRIS et

Ohio Appeals, 2nd Dist, Clark Co

No 379.   Decided Dec 21, 1937

Luther L. Boger, Columbus, for plaintiff-appellee.

Frank L. Nevius, Springfield, and McGrew & Laybourne, Springfield, for defendants-appellants.

### OPINION

By THE COURT

This cause had its inception in the Probate Court of Clark County.

A petition was filed by Paul M. Whaley, executor, for the construction of the will of William Whaley, deceased, probated in Clark County. William Whaley died a resident of the county on the 13th day of February, 1935, and Paul M. Whaley is the duly appointed and acting executor of his estate.

The plaintiff, after setting out the items of the will, states that he is in doubt as to the intent and purpose of the testator in the creation of three trusts, covered by paragraphs 2, 3 and 4 of Item III of the will and that it is his duty to apply to the court for its judgment in respect to the matters of said trusts. The executor prays that the court shall direct him with respect to the true construction of the will and grant him a declaratory judgment thereon.

An answer is filed by Saint Elizabeth's Hospital, Dayton, Ohio, in which it admits certain allegations of the petition but specifically denies plaintiff's allegations that:

"Said testator made no specific provision in said paragraph 3 of Item III for the disposition of the remainder of said trust fund after the death of said Walter Morris, and that said remainder of said trust fund falls under the residuary clause of said will, and is disposed of as therein provided to those who are named as the residuary legatees and devisees in said will."

It is stated that defendant believes and alleges to be true that under Item III, paragraph 3, testator intended and provided for the payment of said trust fund over to defendant, St. Elizabeth's Hospital, Dayton, Ohio, either upon the death of the said Walter Morris after the death of testator, or upon the death of testator in the event

said Walter Morris be not living at the time of testator's death.

It is asserted that the trust estates created by the testator were intended to pass to the beneficiaries named in paragraphs 1, 2, 3 and 4 and were not intended and could in no event, under the provisions of the will, become a part of the residuary estate and pass under Item IV to the beneficiaries named in said Item IV or in any manner other than as provided in said Item III, paragraphs 1, 2, 3 and 4.

The defendant prays the court for a true and proper construction of the will in accordance with the answer and for a declaratory judgment finding the defendant entitled to receive the trust fund provided in Item III, paragraph 3, and payable to the defendant upon the death of Walter Morris. Like answers are filed by Nancy Wetzel and St. Mary's Catholic Church of Osborn, Ohio.

The Probate Court sustained the claims asserted in the answers. A motion for a new trial was filed and overruled and notice of appeal on questions of law was filed at the proper time.

Upon hearing in the Court of Common Pleas the judgment of the Probate Court was reversed and the position asserted by the executor was sustained. Notice of appeal upon questions of law and fact was given by the defendants. The bill of exceptions was taken from the ruling of the Probate Court and filed with the Court of Common Pleas. The errors complained of are apparent from the record.

In Item III of the will the testator stated: "I deem it advisable to create four trust estates in the order named as follows: * * *."

He then provided for four trust funds, bequeathed to his nephew, Paul M. Whaley of Columbus, as trustee, the first being in the sum of $5000.00, the second in the sum of $2500.00, the third in the sum of $2500.00 and the fourth in the sum of $5000.00.

By Item IV he provides:
"All the rest, residue and remainder of my estate, of every kind, wherever located, I give and bequeath, share and share alike * * *." (To his nephews and nieces).

The controversy in this case arises from the provision of the will in reference to the disposition of the trust fund under certain contingencies named by the testator. For ready reference we relate these several provisions:

Under paragraph 1 it is provided:
"The net income derived from this trust estate shall from time to time as received pay over quarterly to my niece, Miss Anna T. Morris, so long as she shall live. Upon her death or if she shall not survive me, then upon my death the trust estate hereby created, together with any income therefrom, shall be paid over to the University of Dayton, located at Dayton, Ohio, to be used for any purpose they wish."

Under the second paragraph it is provided:
"The net income derived from this trust estate shall be paid over to my nephew, Charles Morris, quarterly, so long as he shall live, but if he shall not survive me, then upon my death this trust estate is to be paid over to St. Mary's Catholic Church of Osborn, Ohio, to be used as they wish."

Under the third paragraph it is provided:
"The net income derived from this trust estate from time to time, shall be paid over to my nephew, Walter Morris, so long as he shall live, but if he shall not survive me, then upon my death this trust estate shall be paid over to the St. Elizabeth's Hospital, at Dayton, Ohio, to be used as they wish."

Under the fourth paragraph it is provided:
"The net income from this estate shall be paid over to my niece, Mrs. Mary Hoover, quarterly, so long as she shall live, but if she shall not survive me, then upon my death the principal of this trust estate together with any accruals is to be paid over to my grand-niece, Miss Nancy Wetzel."

Then follows Item IV, disposing of the residue of the estate.

The controversy in this case centers around the provision made by the testator for the disposition of a trust fund after the death of the life tenant. No difficulty is encountered in interpreting the first paragraph, which provides:

"Upon her death or if she shall not survive me, then upon my death the trust estate hereby created" (shall be as therein provided).

Under this provision, if the beneficiary survives the testator she is to enjoy the

estate during her life, after which it passes in fee to the University of Dayton. If she does not survive the testator the trust shall be paid over to the University.

Under the three following clauses of Item III the provision is that the net income shall be paid to the beneficiaries so long as they shall live but if they shall not survive the testator, then, upon the death of the testator the trust estate is to be paid over to the several beneficiaries named. There is no specific disposition of the various funds to be made after the death of the several life tenants if they shall survive the testator, but in the event that they shall not survive the testator, then the trust estate shall be paid to the several answering beneficiaries.

It is admitted that Walter Morris, named in paragraph 3, and Mrs. Mary Hoover, named in paragraph 4, did survive the testator. Whether Charles Morris, named in paragraph 1, survived the testator is a matter of uncertainty, he not having been heard from for many years.

Elaborate briefs have been filed, both by the plaintiff and by the defendants. We cannot but commend the diligence of counsel in calling the court's attention to the rules claimed by each to be applicable to the case at bar. Many of the citations made by counsel for each are equally applicable to the petition maintained by the other. We may briefly summarize the legal principles advanced by each, irrespective of whether their application is favorable to one or the other side. They are well established and we shall refrain from citing authorities.

On reading the will we are convinced that it should not be considered as one inartistically drawn by an illiterate or uninformed testator. The will bears many evidences of having been carefully considered and accurately drawn. Appropriate words are used to express the testator's intent. The trust funds provided for are skillfully established and are carefully protected and the authority of the testator acting in trust capacity is clearly stated. The will may not have been drawn by an attorney but it could not have been improved, so far as the words used, had it been so drawn.

The appellants contend that the intention of the testator as gathered from a full interpretation of the entire will, is that the several legatees named in paragraphs 2, 3 and 4 of Item III, severally take said funds upon termination of the life estates therein established or upon the death of the testator, in the event of the death of one or more previous to the death of the testator and that no contrary construction can reasonably be determined from a proper reading of the entire will.

Five fundamentals of will construction are pointed out:

"1. The sole end in construing a will is to ascertain the testator's intention.

"2. The testator's intention must be ascertained from language he used in the will.

"3. The language the testator used in the will is construed in the light of the circumstances under which he used it.

"4. Every part of the will is construed from its four corners.

"5. Wills are liberally construed in order to give effect to the testator's intention."

The intention of the testator is the cardinal rule in the construction of wills, and if that intention be clearly conceived, and is not contrary to some positive rule of law, it must prevail. The language of the testator is construed in the light of circumstances under which he used it. The paramount rule is that the intention of the testator as gathered from the whole will must control.

The very purpose of the construction of a will is to ascertain the intention of the testator as expressed in the will, viewed in the light of attending circumstances. Every will is so much a thing of itself and generally so unlike other wills that it must be construed by itself as containing its own law. An interpretation is to be avoided which would lead to the conclusion that the testator was acting capriciously without any intelligible motive, contrary to the ordinary mode in which men in general act in similar cases and courts will prefer possible construction which will avoid anomalies, even though the construction adopted is not the most obvious or the most grammatically accurate. All rules of construction are designed to ascertain and give effect to the intention of the testator. The intention is to be culled from the words, 'the will itself," in the light of surrounding circumstances, rather than from any particular form of words. Courts should not consider merely the particular clause in dispute and the language employed in a single sentence does not control as against the evident purpose and intent as shown by the whole will and the intent is to be ascertained from everything within the four corners of the will. If the will clearly indicates what was the testator's intention,

the rules of law which aid in the construction of wills need not be invoked. Effect should be given to every word and clause, if not inconsistent with the general intent of the whole will. The intention of the testator need not be declared in express terms but it is sufficient if the intention can be clearly inferred from the particular provisions of the will. Courts cannot supply the omission by reading into a will something that the testator did not see fit to put there and the only words which may be read into a will are those needed to make plain that which is the manifest intention of the testator, considering the will as a whole, which intention he has not accurately or completely expressed by the words he has used. To justify the supplying of words or clauses in a will it must very clearly appear not only that there has been an omission, but also what is the exact word or clause that should be supplied?

Words in a will cannot be ignored nor can words be interpolated unless it appears from all competent evidence more probable than otherwise that the testator's intertion would be more clearly or fully expressed by such interpolation. Where it appears that the testator omitted words necessary to fully express the meaning intended, the court will supply by construction the omitted words.

Gifts to charitable uses should be favored, rather than that the gifts should fail. Charitable bequests are liberally construed to effect the intention of the testator and every presumption consistent with the language used will be indulged to sustain them.

Wills should not be construed technically but sensibly and liberally in order to effect testator's intention. Clauses of a will where susceptible of two constructions should be construed to harmonize with the remaining provisions and to sustain seeming natural disposition of testator's property. Where the reading of the will produces the conviction that testator must necessarily have intended an interest to have been given which was not bequeathed by express and formal words, the court must supply the defect.

Wills are to be expounded favorably according to the intent of the testator, and when his intention can be ascertained it shall prevail. The purpose in construing any will is to define the meaning and intent of the testator from the language employed.

It is urged by counsel for defendant that

under the rules of construction above set out, the court would be justified in supplying in paragraphs 2, 3 and 4 the words, "upon his death" thereby making the last three paragraphs substantially the same as the first and counsel ingeniously points out many reasons which in his judgment would justify the court in taking the position, among them being that it is clearly disclosed by Item IV that the testator's attention was directed to all the rest, residue and remainder of his estate, which would necessarily lead to the inference that it was his purpose to definitely dispose of the money held in trust so that it would in no event fall within the residuary clause, the inference being that it was his intention to dispose of the trust funds designated in paragraphs 2 and 3 and 4 as effectually as that disposed of in paragraph 1. And counsel points out the size of the testator's estate, which he claims leads properly to the inference that he intended to convey, by the residuary clause, only the remainder after the trust funds were disposed of for charitable use and the use of his grand-niece

Counsel for plaintiff in his brief sets out numerous rules which govern the court in the construction of wills and elaborately answers the claims asserted by counsel for defendant. He especially stresses the rule that the testator's intention must be ascertained from the language used in the will, insisting that the law has been long settled that in construing wills the intention of the testator is to be collected from the words of the will itself and that the court cannot supply the omission by reading into the will something that the testator did not see fit to put there. The duty of the court is to construe the language the testator employed, but a court cannot revise and make a new will where the testator omits to do the thing which it is thought he should have done. The language sought to be construed must have been written in the will by the testator and his intention must be ascertained from the language used. Courts are careful not to make a new will and they refuse to ascertain the testator's intention, except from the words used, together with such extrinsic evidence as is admissible. The question for the court is not what the testator should have meant, but what is the reasonable meaning of the words actually used. The court has no power to make a will or to improve upon the will which the testator actually made. Where there is no ambiguity there can be no room for construction.

With this background we apply ourselves to the proper construction to be given to this will. The testator appears to have been a man of wealth, charitably inclined. He provides for his nieces and nephews both by specific bequest and in the residuary clause, and provides for four trust estates. In the first he definitely provides for a final disposition of the trust fund upon the death of the life tenant, or if he shall not survive him, then "upon my death." In the last three trust funds he provides a life estate, but further, that if the designated life tenant shall not survive him, then upon his own death the trust estate shall be paid over as provided in the several items.

Examining the will as a whole, can we find anything that indicates that the testator did, as a matter of fact, intend to make the same disposition of all four trust funds?

First, we may point out as possibly having some weight, that Item IV makes disposition of all the rest of his estate, it being urged that this definitely segregates the trust funds to a final disposition, other than that provided for in the residuary clause, Item IV. We are unable to see that this circumstance indicates such an intention. The testator knew that if he provided a life estate only that after the death of the life tenant there would be an undisposed of interest in the trust fund, which would properly be disposed of by a residuary clause, such as he has written.

Another circumstance that might be considered is that the testator indicated his charitable inclination toward religious organizations and that, therefore, it was clearly his intention to treat the second and third trust funds in the same manner as the first. This argument could of course, be reversed with just as much and possibly more weight. The residuary legatees might urge that inasmuch as there was no disposition after the death of the life tenant of the second, third or fourth trust fund, the testator did not intend to insert the words, "upon her death," as controlling the devolution of the first trust fund. To argue that because such words appeared with reference to the first trust fund, they should be inserted with reference to the second, third and fourth trust funds, is no more convincing than an argument would be that inasmuch as they were omitted as to the second, third and fourth trust funds, they should be omitted in the first.

Another argument that might be advanced is that as to the fourth trust fund it is provided that if his niece, Mary Hoover, should not survive him, then, upon his death, the principal of his trust, together with any accrual, is to be paid over to his grand-niece, Nancy Wetzel.

We are of the opinion that the court cannot supply by construction, an omission by reading into the will something that the testator did not see fit to put there. The only words which may be read into a will are those needed to make plain that which is the intention of the testator, considering the will as a whole, which intention is not accurately or completely expressed by the words he has used. To justify this it must very clearly appear not only that there has been an omission, but what is the exact word or clause which should be supplied?

We may give construction to words, the meanings of which are ambiguous, but we cannot supply those words if they do not appear in the will, where there is no uncertainty as to the meaning of the words actually used.

Counsel for the defendants assert that it is impossible for the final beneficiary named in Item II to take the trust fund because it is impossible to prove that Charles in fact may have died before the testator. This is possibly true if the death of Charles prior to that of the testator could be established by a presumption of the death, arising from an absence of seven years. The beneficiary under this item is not confined to this method of establishing Charles' death. If it can be proved that Charles, as a matter of fact, predeceased the testator, then the beneficiary named would take and it is not impossible to so establish his death without resorting to a presumptive death arising from seven years absence.

We have carefully considered the argument of counsel in this case and have studied the briefs, but we are unable to agree with counsel for defendant upon the construction and are of the opinion that the Probate Court erred in construing the will as it did; but that the construction given by the Court of Common Pleas was correct.

Judgment of the Common Pleas Court affirmed. Entry accordingly.

BARNES, PJ, HORNBECK and GEIGER, JJ, concur.