MERCHANT, APPELLEE, *v.* ADAIR, APPELLANT; STREET ET AL., APPELLEES.

(No. 278—Decided April 2, 1960.)

*Messrs. Isaac, Postlewaite, O'Brien & Oman*, for plaintiff-appellee.

*Messrs. Crabbe, Garek & Sillman*, for appellant.

*Mr. J. Robert Tanner, Messrs. Allen & Evans, Mr. Walter W. Grelle, Jr., Messrs. Wiedman & Wiedman, Mr. Charles Crabbe, Mr. John A. Sieber, Mr. Ralph E. Carhart, Messrs. Wilhelm & Robinson* and *Messrs. Moore, Myers & Parsall*, for certain defendant-appellees.

CRAWFORD, J. This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas granting to plaintiff, appellee herein, a writ of partition and an order for accounting by defendant, appellant herein, who is in possession of the premises involved, consisting of a 356-acre farm.

Both sides claim title through Preston Adair, deceased. Defendant Alice Louise Adair, appellant herein, is the surviving spouse of the last surviving child of the decedent. Plaintiff, Ruth Melvin Merchant, appellee herein and hereafter referred to as plaintiff, is the great granddaughter of decedent's sister. There are numerous other descendants and heirs of the seven brothers and sisters of Preston Adair, all of whom plaintiff has endeavored to join as parties defendant.

For convenience we shall refer only to the two parties named above. It is agreed that their claims are mutually exclusive. We are not called upon to determine the fractional interests of any of the parties, but only which of these two actually has an interest.

The facts are not in dispute. By will, probated on January 25, 1859, John Adair devised in fee simple substantially the entire farm involved to his son, Preston Adair.

In 1902 Preston Adair died testate and seized of the fee simple title. He was survived by his widow and two sons, John Willis and Byers L. His will was dated March 30, 1902.

Item fifth of his will reads:

"After the payment of my debts as aforesaid, I will and devise said three hundred fifty six acres of land, subject to my wife's right of dower therein, to my two sons, John Willis Adair and Byers L. Adair, in equal proportions, for and during their natural lives respectively—and at the death of either of said

children, I give and devise the share of the one so dying to the heirs of his body. Should either one of my said sons die without lineal descendants, living at his death, the share of the one so dying shall go to the other for life with remainder to heirs of his body."

The will contains no residuary clause or devise. There is no other reference to the farm except for a possible temporary charge upon the income therefrom under certain contingencies no longer significant.

Preston Adair's widow died in 1920. His son, John Willis, died childless in 1934, survived by a widow who died intestate in 1940. His son, Byers L. Adair, died childless in 1957, survived by his widow, Alice Louise Adair, who is his sole heir and devisee, and who has been in possession of the farm, collecting all rents and profits, since his death.

It is obvious that a contingency arose which was not provided for in the will of Preston Adair, namely, the deaths of both his sons without either leaving heirs of his body. There is no ambiguity in the will. We are not permitted to supply an omission. Therefore, the conclusion is inescapable that Preston Adair died intestate as to the reversion in fee. Hence, immediately upon his death such reversion passed to and vested in his heirs, namely, his two sons, subject to being divested in the event either should die leaving issue of his body surviving. 17 Ohio Jurisprudence (2d), 383, Descent and Distribution, Section 46; 17 Ohio Jurisprudence (2d), 526, Descent and Distribution, Section 197. 20 Ohio Jurisprudence (2d), 357, Estates, Section 118. *Gilpin* v. *Williams*, 25 Ohio St., 283; *Snodgrass* v. *Bedell*, 134 Ohio St., 311; *Chaffin* v. *Dixon*, 13 Ohio App., 1.

As we see it, the only possible means of avoiding such a conclusion would be by supplying a different interpretation to some supposed ambiguity in the will. Plaintiff's counsel have made a diligent and scholarly effort to this end. But the authorities cited are concerned with the construction of wills in which some language appears which might lend itself to the desired interpretation.

We find no such language and no ambiguity here. There is simply an omission to provide for a contingency which subsequently occurred. Hence, appellant's efforts are necessarily

limited to suggesting what she contends the testator would have said, if he had said anything.

Unless the will itself contains language from which it could reasonably be deduced that the testator intended a result other than that provided by the laws of descent and distribution, those laws must apply.

Probably the authority most vigorously urged is the case of *Cleveland Trust Co.* v. *Frost*, 166 Ohio St., 329. A bare majority of the Supreme Court construed the language of a will which the dissenting minority considered not to be ambiguous. The conclusion of the majority is based upon elaborate language employed for the purpose of setting up a trust of real estate. This language does not appear to provide directly for the contingency which arose, but the court apparently felt that the testatrix's general intention was too manifest to be ignored. For example, she used very positive language limiting the portion to be taken by her son's widow, and specifically mentioned her own relatives, evidencing a disposition against the widow taking more and a desire to provide for her relatives in certain contingencies, even though the exact situation provided for never arose.

None of those circumstances exist in our present case. There is no provision against defendant's husband, Byers L. Adair, ever receiving the fee; and the collateral relatives, represented by the plaintiff, are neither provided for nor even mentioned in any connection whatsoever.

We cannot believe that the Supreme Court intended to overturn by implication the long-existing rules of will construction. But in any event the decision is easily distinguishable from the present case in the particulars noted.

Plaintiff must rest her claim upon conjecture. The testator having said nothing about the reversion, we can only guess what he would have said had he spoken. While the established rules will not permit us to conjure up words and intentions where none appear, let us suppose that we were at liberty to do so. It appears quite as reasonable to infer intentions favorable to defendant as to plaintiff.

Here, for example, are some of appellant's principal contentions. It is argued that in 1902, when Preston Adair's will

was drawn and probated, a surviving spouse could inherit by descent nothing more than a life estate in ancestral property (Sections 4158, 4160, 4161, Revised Statutes), so that he must be presumed to have intended that the son's surviving spouse should never take the fee. But is that not an equally good reason for supposing that if he were concerned, as it is urged he was, with keeping the property within the blood line, he would have been content to have the reversion in fee devolve upon the sons, there being then no likelihood that it would descend to the wife, and the testator apparently entertaining hope of grandchildren? If, by reason of devise by a son, or subsequent statutory change (such as Section 2105.01, Revised Code), she did take a fee, that is not a circumstance bearing upon the testator's intent, either at the time of drawing the will or at his death. See *Mathews* v. *Krisher*, 59 Ohio St., 562.

It is said that inasmuch as the testator displayed concern for his sons he was primarily interested in preserving the estate in his own blood line. But the heirs of his seven brothers and sisters are so numerous (some apparently claiming as little as a 1/728th interest) that it is almost inevitable that sooner or later some surviving spouse not of the testator's blood would benefit if plaintiff's contentions were correct.

It is argued that because only an estate for life was specifically devised to the sons, testator must have intended them to be limited thereto. Yet there is no language of limitation such as is found in many of the cases. They are not excluded from the reversion. *Bane* v. *Wick*, 14 Ohio St., 505. And the fact that they are mentioned, whereas his collateral kin are not, strongly indicates that of all his relatives, his sons and their possible issue, were uppermost, in his mind as the proper and primary objects of his bounty. *Crane* v. *Exrs. of Doty*, 1 Ohio St., 279.

Another contention is that if Preston Adair wished to bring about the result sought by defendant he would have devised the fee to his sons, subject to being divested if either or both sons left heirs of the body surviving. It may well be that his primary concern was with the possible heirs of the body, rather than with the sons themselves; if so, his secondary consideration for the sons nevertheless negatives any intention that as to the rever-

sion the unmentioned collateral kin should be secondary and the sons excluded.

While indulging in conjecture as to the possible intent of the testator, Preston Adair, it may be pertinent to observe also that the provisions made had a tendency primarily to concentrate the estate in his lineal descendants, not to dissipate it in a multitude of collateral kin.

But conjecture has no part in our decision, which is based upon what the testator said and omitted to say, not upon what he might have intended to say. The effect of his language is clear and unambiguous.

Our conclusion is that Preston Adair died intestate as to the reversion in fee, which at his death descended to and vested in his two sons, subject to being divested in the event either son died leaving heirs of his body; that the last surviving son, Byers L. Adair, effectively devised his interest to his surviving spouse, Alice Louise Adair, the appellant.

The prayer of the petition will be denied, and the costs assessed against the plaintiff-appellee.

*Judgment accordingly.*

WISEMAN, P. J., and KERNS, J., concur.