[Cite as *In re Henderson*, 2013-Ohio-1380.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

IN THE MATTER OF: :

    RALPH A. HENDERSON, :         CASE NO. CA2012-03-051
    Deceased.

:         O P I N I O N
        4/8/2013

:

:

APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
PROBATE DIVISION
Case No. PC11-02-0007

Carl D. Ferris, 225 Court Street, Hamilton, Ohio 45011, for appellant, Thomas Henderson

Repper, Pagan, Cook, Ltd., Christopher J. Pagan, 1501 First Avenue, Middletown, Ohio 45044, for appellant, Thomas Henderson

Fred S. Miller, Baden & Jones Building, 246 High Street, Hamilton, Ohio 45011, for appellee, Jean L. Henderson, Executrix

**PIPER, J.**

{¶ 1} Plaintiff-appellant, Thomas Henderson, appeals a decision of the Butler County Court of Common Pleas, Probate Division, denying his complaint for a declaratory judgment regarding the last will and testament of his father, Ralph Henderson.

{¶ 2} Ralph died testate on August 10, 2010, and his will was admitted to probate on August 26, 2010. Ralph was survived by Thomas, his daughter Beth Ann Galbraith, and his

wife, Jean Henderson. Jean is not the mother of either Thomas or Beth, but rather, married Ralph in 1979 after Thomas and Beth were already born. Jean was named executrix of Ralph's will.

{¶ 3} Ralph and Jean married in 1979. The two entered into an ante-nuptial agreement, whereby, Jean would not take under the will, but rather, according to the terms of the ante-nuptial agreement. However, when Ralph executed his will in 2007, he included a more generous bequeath to Jean than what was provided in the ante-nuptial agreement. Ralph also bequeathed $10,000 to his stepdaughter, and divided the remainder of his estate between Thomas and Beth. According to the terms of Ralph's will, Beth would receive her half of Ralph's residuary estate outright, whereas Thomas would receive his half through a testamentary trust.

{¶ 4} After Ralph's will was admitted to the probate court, Thomas challenged the will by arguing that Ralph's will required Jean to predecease Ralph in order for the residuary estate to pass subject to the trust provisions. Thomas argued that because Jean outlived Ralph, Ralph's will failed to devise the residuary so that such would pass intestate and not subject to the trust.

{¶ 5} Thomas filed a declaratory judgment action in the probate court, seeking a determination that Ralph's residuary passed intestate, and not subject to the testamentary trust. The probate court denied Thomas' request for a declaratory judgment, and instead found that Ralph intended his residuary to pass equally to Thomas and Beth with Beth receiving her inheritance outright, and Thomas' inheritance subject to the trust. Thomas now appeals the probate court's decision, raising the following assignment of error:

{¶ 6} THE TRIAL COURT ERRED IN CONSTRUING THE WILL'S RESIDUARY CLAUSE.

{¶ 7} Thomas argues in his sole assignment of error that the trial court erred in

construing Ralph's will.

{¶ 8} Regarding the interpretation of a will, "it is axiomatic that the intent of the testator, grantor, or settlor will be ascertained and given effect wherever legally possible." *Stevens v. National City Bank*, 45 Ohio St.3d 276, 278 (1989). A court will rely on the express language of the will when determining the grantor's intentions. *Casey v. Gallagher*, 11 Ohio St.2d 42 (1967). "A will is to be construed in the light afforded by the circumstances under which it was made, and the subjects to which it relates." *Stevens* at 279, quoting *Thompson v. Thompson*, 4 Ohio St. 333 (1854), paragraph two of the syllabus.

{¶ 9} According to the Ohio Supreme Court, there are several principles that apply to a court's task of construing the terms of a will. These include,

> 1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.
>
> 2. Such intention must be ascertained from the words contained in the will.
>
> 3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appears from the context that they were used by the testator in some secondary sense.
>
> 4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.

*Stevens* at 279, quoting *Townsend's Executors v. Townsend*, 25 Ohio St. 477 (1874), paragraphs one through four of the syllabus.

{¶ 10} An appellate court's review of a trial court's interpretation of a will is a question of law that is reviewed de novo. *Ledford v. Fleckenstein*, 12th Dist. Nos. CA97-05-048, CA97-07-075, 1998 WL 27235 (Jan.26, 1998).

{¶ 11} Pursuant to the terms of Ralph's will,

> in the event my wife fails to survive me or dies with me as a result of a common accident or disaster or should she die from

any cause within thirty (30) days after my death, I hereby give, devise and bequeath all the residue estate, as follows:

A. One-half thereof to my daughter, Beth Ann Galbraith to be hers absolutely and per stirpes; and

B. One-half thereof to my son, Thomas A. Henderson, but to be held in Trust for and during his lifetime pursuant to the Trust provisions hereinafter contained.

Ralph's will then contains approximately four more pages detailing the trust provisions.

{¶ 12} Although Thomas argues that the trust is inapplicable because Jean outlived Ralph, we disagree. Instead, after a careful reading of Ralph's will, we find that his intention was that his residuary would pass equally to his son and daughter, and that any devise to Thomas would be subject to the trust provisions. The fact that the clause devising Ralph's residuary and introducing the trust references Jean predeceasing Ralph, we cannot read Ralph's will *as a whole* and determine that Ralph meant only for the trust to exist in the event that Jean failed to survive him or that he intended his residuary to pass intestate.

{¶ 13} Beyond the fact that Ralph went into great detail articulating the trust provisions, there are also various portions of the will that make reference to the trust, which do not in any way hinge upon Jean failing to survive Ralph. In fact, the other sections of Ralph's will indicate Ralph intended that the trust exist even if Jean survived him. For example, Ralph appointed Jean as his executrix. When listing her duties, Ralph specifically referenced Jean, and stated that Jean "shall keep in mind the preservation of most or at least one-half of my net investments that will be used to fund the trust established for the lifetime of my son." If Ralph's intentions were as Thomas asserts, it would not be possible for Jean to be alive while the trust was in operation because Thomas asserts the testamentary trust only comes into operation if Jean dies before Ralph. If Ralph intended that the trust only exist in the event of Jean dying before him, Ralph would not have specifically instructed Jean to "keep in mind" the trust provisions.

{¶ 14} In another section of his will, Ralph sets forth details regarding real estate he owned in Florida. Ralph gave Jean the power to sell the condominium, invest the proceeds, and receive the income from the investment. Ralph's will then states, "upon the death of my wife such investments and/or the condominium, if not sold, shall become the property of my daughter and son in equal shares, subject however, to the trust provisions hereinafter contained as to the share of my son." This language unequivocally demonstrates that Ralph contemplated Jean surviving him, yet still intended that any divestment to Thomas of the Florida property would be subject to the trust provisions. Therefore, there is no question that Ralph never intended the trust to exist *only if* Jean died before he did. By virtue of Ralph's multiple references to the trust in circumstances where Jean survives him, his intention is clear that the trust was to exist regardless of whether Jean predeceased him. Thomas, as well as the dissent, says little to address the significance of these multiple references.

{¶ 15} Moreover, Ralph's will expressly states that any divestment received by Thomas from Ralph's estate would pass subject to the trust. "The portion of my estate passing to my son shall be held for him in Trust by the Trustee hereinafter named * * *."[1] By virtue of his will, Ralph expressly stated that any portion of his estate that passed to Thomas would do so subject to the trust provisions. Ralph went into great detail regarding how Thomas was to receive any disbursements from the trust, as well as how the trust was designed to protect Thomas from his creditors, as well as possibly lessen Thomas' financial burdens such as taxes and child support obligations that Thomas had for Hannah, his daughter from a previous marriage. The trust provisions also reference Hannah, who was 11 years old at the time Ralph executed his will. Ralph stated his desire that Hannah receive a

---

1. Ralph does not distinguish between a "testate" estate or an "intestate" estate. What portion passes to Thomas is to be via the trust. Nowhere in the will does Ralph indicate an intention even remotely contemplating an intestate estate.

"worthwhile" education, and stated that the trustee was authorized to divert income under the terms of the trust to assist Hannah in obtaining a higher education. We cannot give significance to the details of the testamentary trust without finding that Ralph intended any devise to Thomas would pass subject to the trust provisions.

{¶ 16} Thomas has cited several cases wherein other courts have found that a testator failed to dispose of his residuary when the testator's will failed to contain a specific contingency regarding when one party predeceased the other. See *Hart v. Hart*, 3d Dist. No. 4-87-18, 1988 WL 137996 (Dec.14 1988); *Raymond v. Senn*, 6th Dist. No. E-78-30, 1978 WL 214862 (Sept. 22, 1978); and *Whaley v. Morris*, 26 Ohio Law Abs. 518, 1937 WL 2410 (2nd Dist.1937). However, we are cognizant of the fact that any attempt to discern the intent of the testator is limited to the testator's own will, and that each case is fact-specific. *See Moon v. Stewart*, 87 Ohio St. 349 (1913), paragraph one of the syllabus (noting that "where there are doubtful clauses in a will, the court, in determining the meaning that the testator intended they should have, will not be controlled * * * by judicial decisions, in cases apparently similar, but will interpret them reasonably in the particular case"). While we are guided by the general rules of construction as stated above, no case is directly on point when reaching an individual's intent to distribute his estate.

{¶ 17} Even so, we find all of the cases cited by Thomas distinguishable from the case at bar because unlike those cited cases, Ralph's intent regarding his residuary estate was clear from the four corners of his will. Ralph included a specific residuary clause, which split his remaining estate between Thomas and Beth. Ralph included very specific and detailed directions on how the trust would be set up, how it would be funded, how Thomas would take from the trust, who would be trustees, and how the trusteeship would work.

{¶ 18} Instead of fact-specific cases with distinctions from the case at bar, we are reminded of the axiomatic principles that guide a court when construing one's will. While the

dissent is concerned with adding terms or words to a will that do not otherwise exist, our duty to construe Ralph's will has not required us to do either. Ralph's intent is easily ascertained based upon a holistic reading of his will. Unlike the dissent, we fear not that judges will misperceive or misuse our opinion rendered today. Established precedent already exists pronouncing the importance of construing the testator's intent from the document as a whole while applying principles of construction to the specific and narrow facts before the tribunal. *Stevens v. National City Bank*, 45 Ohio St.3d 276, 278 (1989). Furthermore, we are mindful that construing a will in such a manner as to cause a testator's estate to pass intestate is highly disfavored in the law. See *Wendell v. AmeriTrust Co.*, 69 Ohio St.3d 74, 78 (1994) (stating the general proposition that "the law abhors intestate succession and that every reasonable effort will be made to avoid such a result where possible"). Nor does the law favor destroying a part of a testator's will based on a technicality when the testator never intended such destruction. As stated by the Ohio Supreme Court,

> Now, it is rudimentary in the construction of wills that the intention of the testator is to be ascertained, and the whole will given force and effect, if such a construction can be reached consistent with the application of legal principles, and that, when an instrument is open to two constructions, one of which will give effect to the whole instrument and the other will destroy a part of it, the former must always be adopted.

*Tax Commission of Ohio v. Oswald*, 109 Ohio St. 36, 48 (1923).

{¶ 19} Ralph's will is eight pages in its entirety. Reference to the trust appears on seven of the eight pages, and a solid and continuous four and one-half pages of the will set forth the purpose and details of the trust. Within those trust details and provisions, Ralph went into great detail regarding the creation and enforcement of the trust, and none of the details of creation or implementation were associated with Jean in the least, nor did they hinge upon Jean failing to survive Ralph. We simply cannot read Ralph's will in its entirety and state that he intended the trust to exist only if Jean predeceased him, or that he intended

the remainder of his estate to pass intestate if Jean survived him. While Thomas, as well as the dissent, urges us to consider language in the will out of context from the entire document, we decline to do so, as doing so would impose destruction upon the testator's intent.[2]

{¶ 20} Having found as such, we determine that Ralph successfully disposed of his residuary estate within his will, and that the residuary estate devised to Thomas will pass to him subject to the trust provisions. Thomas' single assignment of error is overruled.

{¶ 21} Judgment affirmed.

RINGLAND, P.J., concurs.

M. POWELL, J., dissents.

**M. POWELL, J., dissenting.**

{¶ 22} I respectfully dissent from the majority's decision that any residuary estate devised to Thomas will be subject to the trust provisions.

{¶ 23} The trial court and the majority subject Ralph's bequest to Thomas under the trust established in Item Nine (C) of Ralph's will without regard to whether Ralph's spouse survives him. This is based upon their finding of a manifest testamentary intent of Ralph to do so. The majority finds that Ralph inadvertently omitted from his will a provision to this effect.

{¶ 24} Determining that there is an omission in the will is relatively easy. One would assume that if Ralph provided in his will for the disposition of his residuary estate in the event his spouse predeceases him, he would also provide for its disposition in the event his spouse survives him. However, the ease with which an omission may be identified should not be

---

2. The dissent finds it noteworthy that we analyze provisions in the will which neither the trial court nor appellee referenced. Yet, our review is de novo, which obligates us to give consideration to the entire will, with all of its provisions, when determining the testator's intent.

confused with the ease of supplying the omission. It should not be assumed that Ralph would have treated the residuary bequest to Thomas the same whether Ralph was survived or not by his spouse. This ignores the fact that the residuary estate is much smaller if Ralph is survived by his spouse, as the residuary estate would not contain the bequests to his spouse or the property owned by Ralph and his spouse as joint and survivorship tenants. Therefore, as the residuary estate would be smaller, Ralph may have perceived a lesser need for the bequests to Thomas to be subject to a trust or to the same trust provisions set forth in Item Nine(C) of the will.

{¶ 25} It is also significant that the omission in Ralph's will resulted from language he included in the will as much as from language he omitted. The prelude to the residuary clause in Ralph's will provides that "*In the event my wife fails to survive me or dies with me as a result of a common accident or disaster or should she die from any cause within thirty (30) days after my death*, I hereby give, devise and bequeath all the residue estate as follows * * *." Leaving out the italicized language would have resulted in a residuary clause providing as the majority believes Ralph intended. That Ralph included language that specifically addresses the situation of his spouse predeceasing him suggests he had other thoughts on how to treat the situation of his spouse surviving him.

{¶ 26} The language of Ralph's will results in his residuary estate passing according to the statute of descent and distribution if Ralph is survived by his spouse. The majority refers to the rule of law that intestate succession is disfavored. However, we cannot presume to know whether Ralph intended intestate succession of his residuary estate in the event his spouse survived him based upon some undisclosed family or personal circumstance. Other courts have considered wills subject to a supposed omission and interpreted them to result in intestate succession of property. *See Merchant v. Adair*, 113 Ohio App. 513 (2d Dist.1960); *Hart*, 1988 WL 137996.

- 9 -

{¶ 27} The majority references certain provisions of the will as indicating Ralph's intent for his residuary bequest to Thomas to be subject to the trust of Item Nine (C). First is the provision that upon the death of Ralph's spouse, a condominium or the investments arising from the condominium's sale proceeds will pass one-half to Thomas "subject however, to the trust provisions hereinafter contained as to the share of my son." This, the majority suggests, is a clear indication that Ralph intended the residuary bequest to Thomas to be subject to the trust even if the spouse survives Ralph. I interpret this provision as one distinct from the residuary clause, constituting a separate bequest to Thomas subject to the trust provisions and without regard to whether Ralph's spouse survives him.

{¶ 28} The majority also mentions the provision of the will nominating the spouse as executrix, granting certain powers, and directing that certain assets be preserved to fund the trust. The majority asserts that Ralph would not have empowered his spouse in this manner if the trust would only come into existence if the spouse predeceased him. However, the fiduciary power referenced in the provision is not specific to Ralph's spouse but also applies to successor fiduciaries who are nominated in the event that Ralph's spouse predeceases him.

{¶ 29} It is noteworthy that the two provisions relied upon by the majority were not relied upon by either the trial court in rendering its decision or appellee (the executrix of the estate) in defending the trial court's decision.

{¶ 30} The weight of authority does not support correcting a perceived omission in a will. "A court has no power to make a new and different will for a testator in contravention of the language employed in the will." *Kurtz v. Kurtz*, 12th Dist. No. CA90-09-017, 1991 WL 84027, *3 (May 20, 1991). "When a will or its terms are ambiguous, reasonably capable of two or more different meanings, the probate court may adopt the meaning it finds consistent with the testator's intentions. However, the court may not correct an omission in a will by

- 10 -

creating a provision which it concludes that the testator intended to make, but didn't." *Nord v. Bradenburg*, 2d Dist. No. 97-CA-1437, 1998 WL 72258, *2 (Feb. 6, 1998). Supplying an omission to a will is "a procedure foreign to the construction of wills." *Hart*, 1988 WL 137996 at *3.

{¶ 31} The Second Appellate District observes that the danger in supplying an omission to a will lies in the fact that "it must very clearly appear not only that there has been an omission, but what is the exact word or clause which should be supplied?" *Whaley*, 26 Ohio Law Abs. at 521-522. There are sufficient doubts here as to how Ralph would have treated his residuary estate if his spouse survives him as to render uncertain what, if anything, ought to be added to his will. If Ralph's will is to suffer from a mistake, it is better that it be his rather than ours.

{¶ 32} The majority cites *Stevens*, 45 Ohio St.3d 276, to stand for the proposition that will construction is an exercise in discerning the testator's intent from a consideration of the will as a whole. I agree with the majority on this proposition. However, it is instructive that the supreme court in *Stevens* applied that proposition by construing the meaning of words used in the will as opposed to adding words.

{¶ 33} Significantly, there is no claim or indication of ambiguity in Ralph's will. The trial court found no ambiguity in the will.[3] Appellee does not argue ambiguity. The majority cites no ambiguity. Today we grant license for judges to step beyond their traditional function of construing wills. I fear that our opinion today will lend itself to misapplication, misuse, and mischief.

{¶ 34} With due regard and respect for my colleagues, I dissent.

---

3. The trial court found that Ralph's will suffered from a "drafting error."