OPINION
Defendant-appellant Chris Markos[1] ("Markos") appeals from the granting of a permanent injunction in favor of plaintiff-appellee Grand Bay of Brecksville Condominium Association ("Association") which ordered Markos to remove an offending structure, to-wit, a patio enclosure, from his condominium.[2] The Association is organized pursuant to R.C. 5311, et seq. The Declaration and By-Laws of the Association and their amendments, which apply to each condominium unit owner and regulate the administration of the Association, are recorded and are a part of the record on appeal. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that Markos and his wife, Alice Markos, purchased from the condominium complex developer a family condominium unit, valued at $171,000, and located at 6731 Hidden Lake Trail in Brecksville, Ohio, on February 10, 1994.[3] This unit was built for the Markoses according to their specifications.[4] Markos' unit is part of the Association. The Markoses sale and purchase was subject to "Chapter 5311 of the Ohio Revised Code (the `Act') relating to Condominiums, the Declarations, the Drawings, and the Bylaws, . . . pertaining to Grand Bay of Brecksville Condominiums * * *." See the February 10, 1994, Purchase Agreement at paragraph 14. The developer of the condominium complex was Flair Corporation, d.b.a. Grand Bay of Brecksville, an Ohio Limited Partnership. Thereafter, Markos took occupancy of the unit on July 1, 1994, and testified that he paid monthly Association fees starting July 15, 1994. (R. 24-25.) Mr. Markos, without notifying or obtaining the consent of the Association, then engaged the services of ReSash, Inc., on August 18, 1994, to construct an enclosure on the existing concrete patio of his unit for the sum of $8,466.00.[5] The patio enclosure construction was completed on October 7, 1994. The Association discovered the construction on January 9, 1995, and advised Markos by letter dated February 3, 1995, to remove the enclosure from the patio. Mr. Markos made several attempts to work through the Association to obtain permission after-the-fact to construct the patio enclosure, but was ultimately unsuccessful. Mr. Markos claimed that he had an oral agreement with the developer (Mr. Madow)[6] at the time the Markoses contracted for the purchase of the unit, prior to the plat being filed, which agreement permitted him to construct the enclosure on the patio. Mr. Madow corroborated that oral agreement, stating that the developer would not build the enclosure so as to save construction costs and keep the purchase price down; Mr. Markos desired to hire another contractor once the unit was completed who would build the enclosure at a cost which was less expensive than the developer. There was no writing corroborating the understanding.
Unable to reach an agreement on removing the enclosure, Associated filed its complaint for temporary and permanent injunctive relief pursuant to Civ.R. 65(B)(2) solely against Mr. Markos on September 13, 1996, arguing that Markos did not obtain prior written consent for the construction from the Association as required by the Declarations, Article 4. The merits of the action were tried to the bench commencing on December 17, 1997. The trial court issued its ruling on January 21, 1998, ordering the Markoses' patio enclosure to be removed by April 16, 1998. This timely appeal presents five assignments of error.
 I "THE TRIAL COURT ERRED IN DETERMINING THAT A CONDOMINIUM OWNER, PURCHASING A NEW UNIT BEING CONSTRUCTED BY THE DEVELOPER, NEEDS TO ACQUIRE THE CONDOMINIUM ASSOCIATION'S APPROVAL TO ENCLOSE A LIMITED COMMON AREA, EVEN THOUGH THE DEVELOPER AUTHORIZED THE ENCLOSURE, AND EVEN THOUGH THE UNIT OWNER WAS NOT YET SUBJECT TO THE ASSOCIATION'S AUTHORITY."
The central question to be answered in this assignment is, at what point did the Association's authority attach over improvements to common property. Appellant argues that this did not occur until the corrected plat amendment was recorded (see the 12th amendment to the Declaration of Condominium Ownership recorded on July 20, 1995). Appellee contends that its authority vested over the property at the time when the Markoses took lawful possession of the property on July 1, 1994, pursuant to R.C. 5311.19, even though the title to the property was still in the possession of the developer. In the alternative, such authority attached at the time the 10th amendment to the Declaration of Condominium Ownership was recorded by the developer on July 15, 1994, or at the time the warranty deed was recorded on July 18, 1994.
R.C. 5311.19 provides "all persons lawfully in possession and control of any part of the condominium property shall comply with all covenants" and conditions in the deed to which they are subjector in the Declarations and By-Laws of the unit owners Association. Since Mr. Markos was in lawful possession of the unit as of July 1, 1994, he was bound by the Declarations and By-Laws of the Association as they existed at that time pursuant to R.C. 5311.19. The Declaration of Condominium Ownership, since its original recording on August 24, 1988, in Volume 88-4334, page 33 et seq. of the County Recorder's Records, has consistently provided through all its amendments that changes and construction to common areas and facilities shall not be permitted unless done pursuant to prior written approval of the Association. See Declaration at Article 4.2(e) and (f). Accordingly, the trial court did not err in determining that defendant-appellant's addition of a patio enclosure was subject to the approval authority of the Association over changes to the common property.
The first assignment of error is overruled.
 II "THE TRIAL COURT ERRED IN HOLDING THAT A CONDOMINIUM ASSOCIATION CAN FORCE THE REMOVAL OF A PATIO ENCLOSURE CONSTRUCTED ON LIMITED COMMON AREA, WHEN THE ASSOCIATION CHOSE TO SUE ONLY ONE OF THE TWO OWNERS OF THE CONDOMINIUM UNIT, AND WHERE THE UNIT OWNER WHO WAS SUED IS BEING ASKED TO OBEY AN IMPOSSIBLE ORDER, IN VIOLATION OF THE RIGHTS OF THE OTHER UNIT OWNER NOT A PARTY TO THE PROCEEDINGS."
In this assignment, appellant argues that the trial court should not have proceeded with the action without the spouse (Alice Markos) of the defendant-appellant because that spouse was a co-owner of the condominium unit in question and therefore a necessary party defendant pursuant to Civ.R. 19 (A).
Civ.R. 19(A) provides in pertinent part the following:
 "(A) Persons to Be Joined if Feasible. A person who is subject to service of process shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (a) as a practical matter impair or impede his ability to protect that interest or (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest, or (3) he has an interest relating to the subject of the action as an assignor, assignee, subrogor, or subrogee. * * *"
The Markoses, as unit owners, hold a fee simple estate in the condominium unit as tenants in common. The common areas and facilities within the complex include all parts of the condominium property other than the individual condominium units. See Declaration at Article 1.11 and 1.15. The Markoses' patio area is classified as limited common property, meaning that the patio area is reserved for the use of the Markoses' condominium unit to the exclusion of all other units. See Declaration at Article 1.18. In the appellant's argument, the only basis for applying Civ.R. 19 (A) is an undifferentiated generalized charge that Mrs. Markos has an interest in the property.
Applying Civ.R. 19 to the facts of this action, it is clear that the present complaining parties, i.e., plaintiff-appellee, can obtain complete relief in the absence of Mrs. Markos in the form of having the offending improvement removed. Thus, standard number (1) contained within Civ.R. 19(A) is not at issue. Likewise, standard number (3) is not implicated since Mrs. Markos is not an assignor/assignee or a subrogor/subrogee. As to the remaining standard, number(2)(a), the ability of Mrs. Markos to protect her claimed interest, as a practical matter, is not impaired or impeded because her husband and fellow tenant-in-common has maintained the defense to the action seeking the removal of the enclosure. As to standard number(2)(b), it is difficult to imagine that the absence of Mrs. Markos would leave Mr. Markos subject to a risk of multiple or inconsistent obligations by reason of Mrs. Markos' claimed interest. Accordingly, the trial court did not err in proceeding with the action in the absence of Mrs. Markos being a necessary party-defendant.
The second assignment of error is overruled.
 III "THE TRIAL COURT ERRED IN RULING THAT THE AUTHORIZATION BY THE CONDOMINIUM ASSOCIATION BOARD OF ANOTHER PATIO ENCLOSURE ON LIMITED COMMON AREA, COUPLED WITH THE BOARD'S FAILURE TO NOTIFY SUBSEQUENT UNIT OWNERS OF AN ALLEGED CHANGE IN POLICY, DID NOT PRECLUDE THE BOARD FROM ENFORCING THE REMOVAL OF THE APPELLANT'S ENCLOSURE UNDER THE EQUAL PROTECTION CLAUSE OF THE UNITED STATES CONSTITUTION."
Appellant argues in this assignment that the Association selectively enforced its rules against appellant despite the Association permitting other changes to common areas in the past, thereby depriving appellant of equal protection of the law in violation of the Fourteenth Amendment to the United States Constitution.
The record on appeal indicates that only one other patio enclosure has been constructed at the condominium complex. This prior example was built at a unit owned by Mr. and Mrs. Sherman in the first phase of the complex development. The Sherman enclosure was authorized at a time prior to 1992 when the five-member Board overseeing the Association was controlled by the developer.[7] Since 1992, when the Board was comprised solely of elected members from the residents of the complex and the developer had no input on the Board, the Board has not permitted the construction of patio enclosures.
The record also reveals that the present Board has permitted modifications to several patios within the Association; however, these changes were to add another concrete slab section to two existing patios owned by different unit owners, and to add a concrete walkway to a patio deck of another unit owner. These authorized changes to common areas are not analogous in extent to the construction of a patio enclosure which totally conceals the existing concrete slabs of the patio and forms, in effect, a separately contained room addition to the condominium unit.
Clearly, the post-1992 elected Board has not wavered in its opposition to the construction of patio enclosures. We see no evidence that this opposition has been arbitrarily or selectively applied against the appellant in the case of a patio enclosure.
The third assignment of error is overruled.
 IV "THE TRIAL COURT ERRED IN ITS DETERMINATION THAT A CONDOMINIUM ASSOCIATION CAN ORDER THE REMOVAL OF A PATIO ENCLOSURE FROM A UNIT OWNER'S LIMITED COMMON AREA, WITHOUT FIRST AFFORDING THE UNIT OWNER DUE PROCESS OF LAW BY AFFORDING HIM A HEARING AND THE OPPORTUNITY TO FULLY SET FORTH HIS POSITION, PRIOR TO INSTITUTING SUIT PROCEEDINGS FOR THE REMOVAL OF THE ENCLOSURE."
Condominium owners' associations act as a "quasi-government entity paralleling in almost every case the powers, duties, and responsibilities of a municipal government." Belvedere CondominiumUnit Owners Assn. v. R.E. Roark Companies, Inc. (1993), 67 Ohio St.3d 274. 280, citing Hyatt Rhoads, Concepts of Liability in the Development and Administration of Condominium and Home Owners Associations (1976), 12 Wake Forest L.Rev. 915, 918. Accordingly, the Association must accord a unit owner procedural due process. Procedural due process requires notice and an opportunity to be heard. See Hamilton v. Fairfield Twp. (1996). 112 Ohio App.3d 255.
The By-Laws of the Association require that at least one meeting of the Board occur during each calendar year at which time any and all business within the power of the Board may be transacted. See By-Laws at Article 4.12. Likewise, meetings of the Association and the unit owners must be conducted at least once per year. See By-Laws at Article 3.3. Special meetings of the Board are authorized at other times throughout the year, see By-Laws at Article 4.13, as well as special meetings of the Association and the unit owners, see By-Laws at Article 3.4. In the case of the Association, a special meeting may be called upon the request of the President of the Association, the Board, or by 25% of the voting power of the Association's unit members. See By-Laws at Article 3.4. The record indicates that at no time did Mr. Markos seek a special meeting of either the Board or the Association to discuss his patio enclosure problem. However, the record does indicate Mr. Markos, prior to the commencement of the action, appeared at meetings of the Association at which time he discussed the patio enclosure situation with the members who were present. Also, there was correspondence between the parties prior to the commencement of the legal action in efforts to resolve the situation. Mr. Markos, by having knowledge of the restrictions contained in the Declarations and agreeing to be bound by those restrictions and curative measures therein, and by having notice of the decision seeking the removal of the offending structure and opportunities to present his concerns to the Association and the Board prior to the commencement of the action, was afforded sufficient procedural due process.
The fourth assignment of error is overruled.
 V "THE TRIAL COURT ERRED IN FAILING TO RECOGNIZE THAT THE DOCTRINE OF LACHES BARS AN ACTION IN EQUITY WHEN A UNIT OWNER ALTERS HIS POSITION IN JUSTIFIABLE RELIANCE THAT THE ASSOCIATION WOULD NOT BE PURSUING THE MATTER."
In this assignment, appellant raises several arguments. First, appellant argues that he relied upon the developer's oral agreement that he could construct a patio enclosure and that he changed his position in reliance on that agreement by building the enclosure and purchasing furnishings for the addition. Second, appellant argues that he justifiably relied upon the fact that another patio enclosure had been constructed prior to his and that he had never been told that his plans for an enclosure would not be approved. Third, appellant asserts that a period of eighteen months passed between the time he was first served notice of being in violation of the Declaration and the time the action was commenced and that in the interim he changed his position by acquiring furnishings for the enclosure.
The doctrine of laches as an affirmative defense was recently discussed in State ex rel. Mallory v. Public Employees RetirementBd. (1998), 82 Ohio St.3d 235. 244:
 Laches is an equitable doctrine and it is fundamental that he who comes into equity must come with clean hands. Christman v. Christman
(1960), 171 Ohio St. 152, 154, 12 Ohio Op.2d 172, 173, 168 N.E.2d 153, 155. A knowing violation of applicable law would certainly preclude a party from asserting the affirmative, equitable defense of laches.
 Assuming, however, that appellees do have standing to raise the issue, the elements of laches are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party. State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections (1995), 74 Ohio St.3d 143, 145, 656 N.E.2d 1277, 1279. Prejudice is not inferred from the mere lapse of time and `in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.' Stevens v. Natl. City Bank (1989), 45 Ohio St.3d 276, 285, 544 N.E.2d 612, 621, quoting Smith v. Smith
(1959), 168 Ohio St. 447, 7 Ohio Op.2d 276, 156 N.E.2d 113, paragraph three of the syllabus. (Emphasis added.)
Viewing the evidence developed in this action, it is clear that Mr. Markos purchased the subject condominium unit and executed a warranty deed which was expressly made subject to the Declaration and By-Laws of the Association. The Declaration and By-Laws set forth prohibitions on unit owners making unapproved unilateral changes to common property and facilities and provide enforcement measures for the Association to remedy any unapproved changes to common property. Mr. Markos' knowing violation of the prohibition against unapproved changes to common property precludes him from asserting the doctrine of laches since he did not come into the equity jurisdiction of the court with clean hands. Id.
Even if Mr. Markos did have standing to assert the defense of laches, we do not conclude that the Association unreasonably delayed in asserting its right to seek rehabilitation of the patio to its pre-enclosure condition. Thus, the first element of the standard for laches is not satisfied. Also, we do not conclude that Mr. Markos' position was materially prejudiced by any delay in the Association asserting its right to seek removal of the offending structure. If anything, any prejudice innuring to Mr. Markos was occasioned by Mr. Markos' (1) initial decision to not seek written approval from the Association for the improvement prior to its construction in violation of the Declaration and (2) then compounding that error by unilaterally furnishing the addition[8] in mid-1996 despite having been served in early-1995 with a notice to remove the structure and knowing through a series of subsequent negotiations that the Association was adamant about removing the structure. Accordingly, laches does not bar the appellee's injunction action.
The fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
DIANE KARPINSKI, P.J.
TIMOTHY E. McMONAGLE, J. CONCUR.
[1] Mr. Markos has a law degree, but is not a lawyer and has never practiced law, but has been a licensed real estate appraiser in Ohio for over thirty years. (R. 16-17.)
[2] A color photograph of the rear of the condominium unit depicting the patio enclosure is included in the record. See Plantiff's Exhibit AA.
[3] The Purchase Agreement to the parcel listing the Markoses as owners was executed on February 10, 1994, and recorded by warranty deed on July 18, 1994. This warranty deed correctly listed the address of the subject property as 6731 Hidden Lake Trail. The Markoses, as Grantees, agreed to take the property subject to the Condominium Declarations, Drawings and By-Laws. See Warranty Deed at pages 1-2. The plat prepared to amend the Declarations of Condominium Ownership ("Declarations") so as to account for the ownership of new units up to that time, however, erroneously identified the address number of the subject unit as 6735 Hidden Lake Trail. See the tenth (10th) amendment to the Declaration of Condominium Ownership recorded July 15, 1994. The plat to the Markoses unit was not correctly prepared and recorded with the correct plat address number identification until July 20, 1995, when the developer recorded a twelfth (12th) amendment to the Declaration of Condominium Ownership. Also, at the time of Markoses' purchase of 6731 Hidden Lake Trail, Mr. Markos was living at 6735 Hidden Lake Trail. (R. 23.)
[4] The Markoses' unit was built during the third phase, the final phase, of the development. The total number of condominiums in the development is seventy-one (71) units.
[5] According to the Declarations of the Association, at Article 7.2, the driveway of the unit, the walkway from the driveway to the unit, the patio adjacent to every condominium unit, and porches (if any), constitute "limited common property." (R. 31-32.)
[6] Mr. Madow and Mr. Markos, who are in their seventies, have been friends since high school. Also, Mr. Markos has appraised many properties and developments for Mr. Madow over the years.
[7] Other intrusions of common area authorized by the developer-controlled Board include several wooden decks constructed at the time the particular condominium unit was built, along with wooden access steps to decks.
[8] The Markoses purchased patio furniture ($2,140.00, which includes shipping) for the enclosure on April 9, 1996, from Sheribel Wicker Rattan Company in Pompano Beach, Florida. On August 30, 1996, the couple purchased cotton blinds ($1,005.48, which includes shipping) for the enclosure windows from House of Blinds in Parma Heights, Ohio.