Stevens et al., Appellees, v. National City Bank, Trustee Under Will of Crider, Deceased, Appellant.

[Cite as Stevens v. Natl. City Bank (1989), 45 Ohio St. 3d 276.]

(No. 88-1049—Submitted May 3, 1989—Decided September 13, 1989.)

---

[1] Mary C. Stevens died in California on June 3, 1988, and one Myron L. Garon, Incorporated, was appointed as her executor. On February 15, 1989, this court granted

_____

appellant's motion to substitute Stevens' executor in her behalf as a party in this appeal.

*Rippner, Schwartz & Carlin, Angela G. Carlin* and *Linda Gebauer Mayer,* for appellees.

*Hahn Loeser & Parks, John A. Hallbauer, Craig A. Glazer* and *Jeffrey D. Van Niel,* for appellant.

*Porter, Wright, Morris & Arthur, David A. Swift* and *Edward M. Segelken,* urging reversal for *amicus curiae,* Ohio Bankers Association Trust Division.

HOLMES, J. We are presented in this case with the task of construing the terms of the will of John S. Crider, in a manner which is consistent with the intent of the testator. *Townsend's Executors* v. *Townsend* (1874), 25 Ohio St. 477. Specifically, the issue before us is whether the language of Paragraph 11, Item VI of the Crider will constitutes a mandatory limitation on the trustee's general power to sell trust assets granted in Paragraph 6, Item VI of such will. For the reasons which follow, we answer such query in the negative, and thus reverse the court of appeals.

Recently, in *Ohio Citizens Bank* v. *Mills* (1989), 45 Ohio St. 3d 153, 155, 543 N.E. 2d 1206, 1208, this court set forth the basic parameters of will construction:

"First, it is axiomatic that the intent of the testator, grantor, or settlor will be ascertained and given effect wherever legally possible. *Townsend's*

*Executors* v. *Townsend* (1874), 25 Ohio St. 477; *Jones* v. *Lloyd* (1878), 33 Ohio St. 572; *Wills* v. *Union Savings & Trust* (1982), 69 Ohio St. 2d 382, 23 O.O. 3d 350, 433 N.E. 2d 152; *Sandy* v. *Mouhot* (1982), 1 Ohio St. 3d 143, 1 OBR 178, 438 N.E. 2d 117; *Tootle* v. *Tootle* (1986), 22 Ohio St. 3d 244, 22 OBR 420, 490 N.E. 2d 878. The express language of the instrument generally provides the court with the indicators of the grantor's intentions, *Casey* v. *Gallagher* (1967), 11 Ohio St. 2d 42, 40 O.O. 2d 55, 227 N.E. 2d 801, and the words used in the instrument are presumed to be used in their ordinary sense. *Albright* v. *Albright* (1927), 116 Ohio St. 668, 157 N.E. 760.''

Essentially, these principles were first stated in the first four paragraphs of the syllabus of *Townsend's Executors, supra:*

''1. In the construction of a will, the sole purpose of the court should be to ascertain and carry out the intention of the testator.

''2. Such intention must be ascertained from the words contained in the will.

''3. The words contained in the will, if technical, must be taken in their technical sense, and if not technical, in their ordinary sense, unless it appears from the context that they were used by the testator in some secondary sense.

''4. All the parts of the will must be construed together, and effect, if possible, given to every word contained in it.''

See, also, *Thompson* v. *Thompson* (1854), 4 Ohio St. 333, wherein it was additionally stated that ''[a] will is to be construed in the light afforded by the circumstances under which it was made, and the subjects to which it

relates.'' *Id.* at paragraph two of the syllabus.

Both parties to this dispute cite our decision in *Townsend's Executors* in support of their arguments, as did the court of appeals below. However, the lower courts failed, and appellees' argument declines, to construe together Paragraphs 6 and 11 of Item VI of the Crider will, and failed to give effect to *every* word contained therein.

The extent of the duties and powers of a testamentary trustee are to be determined from the four corners of the will. See IIA Scott on Trusts (4 Ed. 1987) 250, Section 164. As a general matter, a trustee is required to exercise the same care, skill and diligence that an ordinarily prudent man would exercise over his own affairs and property. *State* v. *Guilford* (1846), 15 Ohio 593, 595; 1 Restatement of the Law 2d, Trusts (1959) 379, Section 174; 5A Bogert, Trusts and Trustees (2 Ed. Rev. 1978) 157, Section 541. Where a corporate trustee has held itself out as having a greater degree of skill or facilities than the ordinarily prudent man, it may be held to a higher degree of care. IIA Scott, *supra,* at 472, Section 174.1; accord *In re Trusteeship of Trust of Sedgwick* (1944), 74 Ohio App. 444, 30 O.O. 65, 59 N.E. 2d 616; *Freeman* v. *Norwalk Cemetery Assn.* (1950), 88 Ohio App. 446, 45 O.O. 231, 100 N.E. 2d 267; *Union Commerce Bank* v. *Kusse* (1969), 21 Ohio Misc. 217, 225, 49 O.O. 2d 413, 417, 251 N.E. 2d 884, 890. Most importantly, ''[s]o long as a trustee executes the trust in good faith and within the limits of a sound discretion, a court of equity will not interfere with that discretion or undertake to substitute its discretion therefor.'' *Hopkins* v. *Cleveland Trust Co.* (1955), 163 Ohio St. 539, 56 O.O. 442, 127 N.E. 2d 385, paragraph one of the syllabus; *Sherman* v. *Sherman* (1966),

5 Ohio St. 2d 27, 34, 34 O.O. 2d 48, 52, 213 N.E. 2d 360, 366; Restatement of Trusts 2d, *supra,* at 402, Section 187.

In the instant case, the Crider will grants to the trustee the "full power and authority to * * * sell * * * invest and reinvest" *all* property within the trust "as it deems advisable and to deal therewith in all respects as though the absolute owner thereof." Although R.C. 2109.37 and 2109.371 provide a permissive "legal list" of proper investments, the broad authority and discretion granted the trustee by the Crider will renders inapplicable these statutory limitations on the types of investments which may be made. *Home Savings & Loan Co.* v. *Strain* (1935), 130 Ohio St. 53, 3 O.O. 104, 196 N.E. 770; *Willis* v. *Braucher* (1909), 79 Ohio St. 290, 87 N.E. 185.[2] This express, full power of sale permits the trustee to exercise such power without the consent of a court or of the beneficiaries, absent contrary terms within the trust. Restatement of Trusts 2d, *supra,* at 418, Section 190; III Scott (1988), *supra,* at 110, Section 190.5; R.C. 2113.39.[3] The Crider trust does not so limit the trustee's discretion, and thus the trust beneficiaries do not have the authority to direct the trustee as to its investment decisions.

However, even absent limiting terms within a trust instrument, the power of sale and investment of trust assets are not unrestricted. For example, a trustee may not use its discretionary investment powers fraudulently, or in bad faith. *In re Estate of Bentley* (1955), 163 Ohio St. 568, 57 O.O. 5, 127 N.E. 2d 749; 6 Bogert (1980), *supra,* at 213, Section 560. Furthermore, the trustee has a duty to invest idle trust funds so that they will be productive of income. IIA Scott, *supra,* at 542, Section 181; R.C. 2109.42. In doing so, the trustee is under a duty to make such investments "in such securities as would be acquired by prudent men of discretion and intelligence in such matters who are seeking a reasonable income and the preservation of their capital." R.C. 2109.371; Restatement of Trusts 2d, *supra,* at 529, Section 227(A); 6A Bogert (1980), *supra,* at 8, Section 612. Where, as here, there are successive beneficiaries, the trustee is under a duty to act impartially with regard to their respective interests. Restatement of Trusts 2d, *supra,* at 555, Section 232; IIIA Scott (1988), *supra,* at 4, Section 232, and cases cited therein.

As to successive beneficiaries, the appellant trustee's policy, in the absence of trust provisions to the contrary, was to keep in mind the interests of the life beneficiary and the remainder beneficiaries at 50-50. As explained by the trust administration officer for the Crider trust during the January 1980 hearing:

"* * * The current income

---

[2] Moreover, the Crider will expressly waives the limitations of these statutes, *i.e.,* "* * * all statutory or other limitations and restrictions as to the investment of trust funds by trustees or fiduciaries generally now or hereinafter enacted or prescribed being hereby waived." Paragraph 6, Item VI.

[3] R.C. 2113.39 provides:

"If a qualified executor, administrator, or testamentary trustee is authorized by will or devise to sell any class of personal property whatsoever or real estate, no order shall be required from the probate court to enable him to act in pursuance of the power vested in him. A power to sell authorizes a sale for any purpose deemed by such executor, administrator, or testamentary trustee to be for the best interest of the estate, unless the power is expressly limited by such will."

As will be discussed, *infra,* Paragraph 11, Item VI does not expressly limit this power.

beneficiary has a right to receive either taxable or non-taxable income, based on her current tax bracket, on approximately 50 percent of the assets, keeping in mind that the other 50 percent of the assets should be invested in such a way for the future remaindermen of the Trust.

"If we were to invest solely in tax free bonds, this might not be of benefit to future beneficiaries. Likewise, if we invest solely in equities, securities that were of a low yield, this might [not] be of benefit to the current income beneficiary."

Thus, in meeting its duty of impartiality as trustee, appellant was required, and attempted, to create as much income for the life beneficiary as possible without neglecting the interests of the remainder (principal) beneficiaries, trying to keep the interests of both as equal as possible. This duty was met by the performance of a co-existing duty, the duty of diversification.

Central to the issue in this case, it is well established that a trustee, except as otherwise provided by the terms of the trust, is under a duty to the beneficiaries to distribute the risk of loss within the trust by prudent diversification, limiting the proportion of total trust assets which are invested in any one stock or class of securities. Restatement of Trusts 2d, *supra*, at 541, Section 228; Annotation (1969), 24 A.L.R. 3d 730; 6A Bogert, *supra*, at 18, Section 612, and cases cited therein. This duty to distribute the risk of loss includes the "disposal," or sale, of "investments included within the

trust at the time of its creation which, although otherwise proper investments for the trustee to retain, are improper because not properly diversified." Restatement of Trusts 2d, *supra*, at 548, Section 230, Comment j.[4] A breach ·of such duty may render the trustee liable for any loss sustained by the failure to diversify. See, *e.g., In re Mueller's Trust* (1965), 28 Wis. 2d 26, 135 N.W. 2d 854; *Steiner* v. *Hawaiian Trust Co.* (1964), 47 Haw. 548, 393 P. 2d 96.

Alan Homans, a chemical industry securities analyst with appellant since 1945, testified before the referee that appellant has always had a policy that prudence called for diversification of assets in those accounts which granted the trustee full authority to diversify, and he reiterated that a portfolio for high income and growth of income for the life beneficiary would be constructed quite differently from a portfolio for principal appreciation on behalf of remainder beneficiaries, thus requiring diversification. Furthermore, as explained by the trust investment officer of the Crider trust, diversification "would be beneficial for both income and principal beneficiaries because you cannot rely upon the income of a single company or a single company which represents a substantial part of a portfolio in continuing to pay dividends at the old rate that there have been a great number of dividend reductions for a good number of companies or a lack of dividend increase and, therefore, the lack of a dividend increase could work to the disadvantage of the income beneficiary if this

---

[4] R.C. 1109.10(B) and 2109.38 are not to the contrary, as those statutes relieve the trustee only from liability for retention of securities which are not listed in R.C. 2109.37 and 2109.371 ("non legals"), and do not relieve the trustee from its general

obligation of due care and prudence. III Scott, *supra*, at 517-518, Section 230; accord *Union Commerce Bank* v. *Kusse* (1969), 21 Ohio Misc. 217, 224-225, 49 O.O. 2d 413, 417, 251 N.E. 2d 884, 890.

asset were held in a relatively large amount in a specific account."

As part of its diversification policy, appellant would question a concentration of holdings in excess of thirty percent of the total trust account, or a lesser amount, depending on the size of the account. The trust investment officer for the Crider trust testified the large concentrations of Dow and Union Carbide stock — each as much as thirty-nine percent of the total trust assets — "were a very significant part of all of the reasons for my wanting to sell Dow and Union Carbide." In fact, these sales were made by the trust investment officer generally without regard to whether the outlook of these companies was favorable or unfavorable.

Appellees argue that this duty to diversify, as carried out by the trustee, was modified by the terms of the Crider trust, *i.e.,* Paragraph 11, Item VI. It is, of course, a generally accepted principle that a settlor has the power to make provisions in a trust which alter or even eliminate the trustee's duties to diversify, to make trust property productive, or even the duty to invest as would a prudent man. Restatement of Trusts 2d, *supra,* at 391, 529, 541, 544, Sections 181, 227, 228, 230; 7 Bogert (1981), *supra,* at 92, Section 680.

Specifically, a trustee may, by the terms of the will, be either directed or merely authorized by the settlor to retain all or certain investments making up the corpus of the trust. 7 Bogert, *supra,* at 121, Section 682. If by the terms of the trust a trustee is specifically *directed* to retain certain investments, such trustee is subject to liability if such investments are not retained (absent impossibility, illegality or a judicially determined change of circumstances). However, if by the terms of the trust the trustee is *authorized,*

but not directed, to retain such investments, the trustee is not liable for retaining them unless under the circumstances it would be an abuse of discretion to retain them. Restatement of Trusts 2d, *supra,* at 547, Section 230, Comment *g.*

Moreover, it has been held that a trustee who sells securities in order to obtain diversification, although *authorized* to retain them, is not liable merely because the securities later rise in value. *Attorney General* v. *Olson* (1963), 346 Mass. 190, 191 N.E. 2d 132, In *Olson,* the trust portfolio at issue consisted solely of eight hundred shares of duPont common stock. The trustees were granted by the terms of the will the power "to hold, manage, invest and reinvest" the corpus of the trust. As in the instant case, the trustees were also expressly authorized to retain this stock but instead sold seven hundred shares for the purpose of distributing the risk of loss. Although the trust fund, due to later developments, would have been worth nearly $700,000 more than at the time of the sales, the Massachusetts Supreme Court upheld the trustees' actions. "[T]he action of the trustees is not to be judged on the basis of hindsight. * * * The trustees were justified in diversifying their holdings as they did. See Scott, Trusts (2d ed.) § 228 * * *. That, as events turned out, they did not sell the stock at the most propitious time, does not justify their removal; otherwise there would be few, if any, who would undertake to act as trustees." *Id.* at 198, 191 N.E. 2d at 137. See, also, *Dowsett* v. *Hawaiian Trust Co.* (1964), 47 Haw. 577, 393 P. 2d 89; *Bentley, supra,* at 577, 57 O.O. at 9, 127 N.E. 2d at 754.

We must turn then to the language of Paragraph 11, Item VI to determine whether it was the settlor's intention to direct, or merely authorize, the

trustee to retain the common stock of Dow and Union Carbide, *i.e.,* whether such paragraph is mandatory or precatory in nature. Appellees have cited several decisions from sister jurisdictions wherein the word "request" — the operative word of Paragraph 11 — has been construed to be mandatory. We caution, however, that while decisions of other jurisdictions may be instructive, they "cannot be conclusive, as it is not to be expected that any two wills will be exactly alike. After all, the sound judgment of the Court, in any given case, must be relied upon, to ascertain the meaning of the testator, from the language which he has employed." *Williams* v. *Veach* (1848), 17 Ohio 171, 180. We hold that Paragraph 11, Item VI is precatory in nature, and that the settlor merely authorized the trustee to retain the shares of Dow and Union Carbide stock.

In examining the terms of the Crider will, we are cognizant, and Judge Pryatel noted in his dissent below, "that decedent had been on the board of trustees of National City Bank for approximately 35 years and acted as trustee for certain trusts not in issue in this litigation. From this information, we can glean that decedent was cognizant of the inherent duties required of a trustee including the duty to diversify."

Paragraph 11 begins with the settlor's recognition that his large estate was amassed from the growth of the two companies which he had served for most of his life. Indeed, the settlor knew that securities of those companies comprised over two-thirds of his estate's assets. The settlor then expressed his continued loyalty and confidence in Dow and Union Carbide and their management by requesting "that the Trustee retain *for the most part* the shares in them which may be received from my Executrix." (Emphasis added.) Although "request" may in some contexts convey a mandatory intention, we hold that in the context of the sentence here, a "request * * * [to] retain [shares] for the most part" denotes a mere *authorization* to retain, at the discretion of the trustee. Recognizing, as stated above, that the trustee would then be liable only if such retention were an abuse of discretion, see discussion, *supra*, the settlor continues by defining the scope of such discretion: "unless the outlook should not be the same as it has been for many years past and a change occurring in either or both corporations may prompt the disposition of such shares." Finally, in order to make it clear that a failure of the trustee to diversify would not constitute an abuse of discretion, the settlor expressed his "intention and desire" to relieve the trustee from his usual duty to diversify — again, only "so long as the prospects of these two companies continue to be favorable."[5]

The settlor used the phrase "I request" only in Paragraph 11, Item VI of his will. In contrast, the settlor unambiguously expressed his mandatory intentions throughout the remainder of his will, using such words as "I direct" and "the trustee shall."

Moreover, our construction of

---

[5] We stress that the phrase, "unless the outlook should not be the same as it has been for many years past and a change occurring in either or both corporations may prompt disposition of such shares," modifies only the exercise of the retention option. It does not modify the general duty to diversify. A prudent diversification of large stock holdings in a single corporation is a valid practice in and of itself, irrespective of the outlook of such individual securities.

Paragraph 11 as precatory in nature is the only construction which gives effect to every word in the will. In Paragraph 6, Item VI, the settlor empowered the trustee with authority to sell, control, invest and reinvest the trust assets as fully as a trustee can be empowered in this state, and he did this knowing that the bulk of the assets were Dow and Union Carbide common stock. It would be anomalous for a court to construe a later paragraph of this will to eliminate such authority with respect to as much as eighty-five percent of the value of the estate on so ambiguous a phrase as "I request that the Trustee retain for the most part * * *." See 4 Page on Wills (1961) 134, Section 30.21.

In sum, we hold as a matter of law that the Crider will gave the trustee the full power and discretion to sell, invest and reinvest the corpus of the trust "as though the absolute owner thereof," and included a precatory authorization to retain "for the most part" the shares of Dow and Union Carbide. The trustee declined this request, opting instead for a prudent and gradual diversification program.[6] Because we find that the trustee acted in good faith in the exercise of its sound discretion, and thus did not breach the terms of the trust, we will not substitute our judgment for that of the trustee. It was error for the lower courts to do so.

As an alternative argument, and specifically with regard to appellees' objections to the thirteenth partial account, filed May 17, 1977, and all prior accounts, appellant contends that appellees' action to vacate such account is barred by the doctrine of laches. We find merit to this argument and, although unnecessary to our decision due to our holding on the merits above, we shall briefly discuss it.

Appellees cite to R.C. 2305.22, which provides that the various enumerated statutes of limitation therein "do not apply in the case of a continuing and subsisting trust." The obvious response is that the defense of laches is quite independent of a statute of limitations. "Delay for a shorter period than the statutory limit, accompanied by other conditions, may be sufficient to destroy the beneficiary's remedy." 9 Bogert (1982), *supra*, at 511-512, Section 948. In *Russell* v. *Fourth Natl. Bank* (1921), 102 Ohio St. 248, 268, 131 N.E. 726, 732, we stated:

"Silence and failure to assert one's right for almost half a century, until all persons who were connected with the transactions in question and who would naturally be able to explain and defend the conduct of the bank have passed away, and until after the records have been lost, would seem to constitute a set of circumstances of impelling force upon a court of equity to enforce the doctrine of laches. * * * Where delay exceeds the time fixed for suit at law by an analogous statute of limitations, the burden is on the plaintiff to explain the delay and to show that it would be inequitable to enforce the doctrine of laches." See, also, *Thirty-Four Corp.* v. *Sixty-Seven Corp.* (1984), 15 Ohio St. 3d. 350, 15 OBR 472, 474 N.E. 2d 295.[7]

"Laches is not an affirmative, but

---

[6] Presiding Judge Pryatel, in his dissenting opinion below, observes, in hindsight, that the trustee's diversification program minimized the adverse effect on the value of the trust corpus following the disastrous toxic gas leak at a Union Carbide facility in Bhopal, India, in December 1984.

[7] Similarly, the limitations periods of R.C. 2109.35 apply only to the final accountings of a fiduciary, not to partial accountings. Thus, although a trustee is subject to challenge on his partial accounts, the doctrine of laches may operate to bar such challenge where the equities require. See,

a negative thing. It is neglect to assert a right under such circumstances and for such a length of time, as, when not induced by fraud, or otherwise shown to be justified, will lead a court of equity to refuse its aid." *Russell, supra,* at 270, 131 N.E. at 733.

The elements of the laches defense are: (1) conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant. *Smith* v. *Smith* (1950), 168 Ohio St. 447, 455, 7 O.O. 2d 276, 280, 156 N.E. 2d 113, 119. Once a defendant has, as here, set forth each of these elements, the burden shifts to the plaintiff to explain away the delay. *Russell, supra.*

As to the first element, the trustee began selling shares of Dow and Union Carbide, the conduct giving rise to appellees' complaints, in 1958. The second element, complainant's delay in asserting her rights, is also manifest in that Stevens received quarterly and annual reports since 1958 from the trustee reflecting the Dow and Union Carbide sales, which she either read or passed on to her investment advisor and business partner.[8] She thus had or should have had knowledge by the use of the means of information within her reach, of the trustee's conduct for nearly nineteen years before filing suit in 1977. See, generally, 9 Bogert, *supra,* at 531, Section 949; and *Crist* v. *Dice* (1869), 18 Ohio St. 536, 542, wherein we stated:

"The plaintiff was fully put upon inquiry, and the hardship of which he complains is the result of his own negligence and imprudence. 'Courts of equity give relief to the vigilant, not to the negligent. They refuse their aid to those who by their own negligence, and by that alone, have incurred a loss.' 1 Story's Eq. Jur. Sec. 146, and notes."

Third, Stevens never complained to National City Bank about the sales of Dow and Union Carbide stock, and she testified that she never instructed anyone else to complain. Thus, the trustee was not placed on notice that Stevens would assert her claim prior to the filing of her action.

Fourth, the trustee was prejudiced by this delay. As stated in *Smith, supra,* paragraph three of the syllabus, "[d]elay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." During the nineteen-year delay, the trustee's personnel responsible for the Crider trust

---

generally, 2 Addams & Hosford, Ohio Probate Practice (6 Ed. 1989) 315-319. Accord *In re Russell* (1938), 60 Ohio App. 385, 13 O.O. 239, 21 N.E. 2d 604.

[8] Our discussion of laches is limited solely to the claim of the plaintiff, the life beneficiary. The record is devoid of evidence that the defendant remainder beneficiaries had any knowledge of the conduct of the trustee, and no evidence was presented that they should have possessed such knowledge. In any event, the claims of the remainder beneficiaries are without merit, given our construction of the Crider trust, *supra.*

changed hands, and it seems various records were misplaced or destroyed. See, *e.g., Russell, supra,* at 268, 131 N.E. at 732. More importantly, the amount of potential damages increased greatly during this period and the ability of the trustee to reverse its actions by repurchasing the stock became more difficult. See *Christman* v. *Christman* (1960), 171 Ohio St. 152, 12 O.O. 2d 172, 168 N.E. 2d 153; *Cleveland Short Line Ry. Co.* v. *Duncan* (1911), 84 Ohio St. 463, 95 N.E. 1145.

Finally, Stevens did not rebut the trustee's defense of laches. In attempting to explain the delay and demonstrate why it would be inequitable to enforce the doctrine of laches against her, see *Russell, supra,* Stevens relies solely on a 1963 or 1964 meeting between a trust officer of appellant, and Stevens' investment advisor and Stevens. Stevens was allegedly told at this meeting that she had no say in the manner in which the trust should be invested, and correctly so. It is not at all clear from the record, however, that the Dow and Union Carbide holdings were specifically discussed and, as stated above, no specific complaint was given to the trustee in this regard. The equities favor the trustee, thus Stevens' action should have been barred by the doctrine of laches.

In its fifth proposition of law, appellant contends that the probate court abused its discretion in refusing to reject the referee's 1980 report and to independently hear the matter *de novo.* This argument is devoid of merit. As held by the court of appeals, appellant failed to timely object to the referee's alleged delay in issuing its report. Moreover, the probate court's reference of the matter was fully within its constitutional powers, Section 4(C), Article IV of the Ohio Constitution; Civ. R. 53; *Dillon* v. *Cleveland* (1927), 117 Ohio St. 258, 158 N.E. 606, and was not an abuse of discretion.

Appellant did not breach the terms of the Crider trust in undertaking a program of diversification with respect to the shares of Dow and Union Carbide common stock. The judgment of the court of appeals is accordingly reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.