DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Midland Commerce Group, Joseph and Debra Kiefer, and Norwest Mortgage appeal the determination of lien priority in the forfeiture order of the Summit County Court of Common Pleas. This court affirms.
 I.
The parties stipulated to the following facts before the trial court. On February 10, 1996, Gregory and Laura Duncan purchased property at 92 Melbourne Avenue, Akron. On February 22, 1996, the Duncans gave a $120,000 mortgage to Summit Bank, appellee herein. On August 15, 1996, the Duncans gave a $25,000 mortgage to First National Bank of Ohio. Both the mortgage deeds were recorded within days of being signed. On May 4, 1998, Leppo, Inc. filed a judgment lien in the amount of $4,491.98, with 18% per annum interest from January 1, 1998. On June 12, 1998, Summit Bank also filed a judgment lien against Gregory Duncan's interest in the property in the amount of $58,606.55 plus interest from May 21, 1998.
On September 26, 1998, Joseph and Debra Kiefer entered into an agreement to purchase the property from the Duncans for $150,000. On December 18, 1998, the Duncans transferred the property by warranty deed to the Kiefers. On the same date, the Keifers filed a mortgage deed for $120,000 to secure a mortgage by Norwest Mortgage. Midland Title Security, Inc., a part of Midland Commerce Group, had performed a title search and issued title insurance on the property. Midland had determined that the property was encumbered by two debts: the Summit Bank mortgage with a payoff figure of $121,752.00 and the First National Bank mortgage with a payoff figure of $16,274.70.[1] At the closing, these respective encumbrances were paid off. Midland did not discover the judgment liens of either Leppo or Summit Bank.
On December 18, 1998, Leppo filed a complaint in foreclosure against the Duncans and others to enforce Leppo's judgment lien. The various parties agreed to the stipulated facts recited above. However, Norwest asserted that its mortgage should have first priority because Norwest, in paying off the Summit Bank mortgage, obtained equitable subrogation of the rights initially held by Summit Bank pursuant to the mortgage.
On February 17, 2000, the trial court issued an order setting forth the priority of liens claimed by Leppo, Summit Bank, and Norwest Mortgage. The trial court determined that the Leppo judgment lien had first priority, the Summit Bank judgment lien had second priority, and that the Norwest mortgage had third priority. On April 28, 2000, the court issued an order of foreclosure requiring that the remaining encumbrances be paid off in the priority and amounts previously determined, after the payment of outstanding property taxes.
Midland filed a notice of appeal. Norwest and the Kiefers jointly filed a notice of appeal as well. The appeals were consolidated, and Midland jointly represents appellants' case. Appellants assign two errors.
 II. ASSIGNMENT OF ERROR I THE TRIAL COURT ERRED IN FINDING THAT EQUITABLE SUBROGATION DOES NOT APPLY TO THE KIEFERS' AND [NORWEST] MORTGAGE, INC.'S FUNDS, AND IN TURN GIVING LIEN PRIORITY TO LEPPO, INC. AND SUMMIT BANK.
Appellants propose that the trial court should have determined that when Norwest paid off the Summit Bank mortgage, which was the first priority encumbrance on the property, Norwest was stepping into the place of Summit Bank. Thus, by equitable subrogation, Norwest had first priority, the same priority held by the Summit Bank mortgage previously.
Subrogation is the accession of a second party to rights that are held by another. See State v. Jones (1980), 61 Ohio St.2d 99, 100-101, citingAetna Cas. Sur. Co. v. Hensgen (1970), 22 Ohio St.2d 83 . This can be accomplished by conventional subrogation, which arises by contract either express or implied, or by equitable or legal subrogation. Jones,61 Ohio St.2d at 101. Equitable subrogation "arises by operation of law when one having a liability or right or a fiduciary relation in the premises pays a debt due by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor whom he has paid." Id. at 102, quoting Federal Union Life Ins. Co. v. Deitsch (1934),127 Ohio St. 505, 510. However, the primary purpose of equitable subrogation is to prevent unjust enrichment. State Savings Bank v.Gunther (1998), 127 Ohio App.3d 338, 346. Thus, "[i]n order to entitle one to subrogation, his equity must be strong and his case clear."Jones, 61 Ohio St.2d at 102. The applicability of equitable subrogation depends upon the facts and circumstances of each particular case. Id.
This court has found that it was inappropriate to apply the remedy of equitable subrogation where the party seeking equitable subrogation was guilty of culpable negligence. State v. Jones (Dec. 29, 1978), Lorain App. No. 2738, unreported, at 10. We have also held that equitable subrogation is not appropriate where the party seeking its application was in the best position to protect its own interest. National City Bankv. Forsyth (July 5, 1989), Summit App. No. 13992, unreported, at 4.
In the instant case it is clear that when conducting the title search Norwest's agent Midland negligently failed to discover two judgment liens of record. Furthermore, it is clear that the mortgage deed from the Kiefers to Norwest stated that the instant mortgage was issued subject to "encumbrances of record." Thus, it is clear that Norwest accepted the mortgage subject to encumbrances of record, but that Midland had inaccurately advised Norwest that there were no encumbrances of record.
This error on the part of Norwest's agent Midland does not constitute a situation where Norwest has strong equity and a clear case to prevent the unjust enrichment of another.
This court cannot conclude that the trial court erred in determining that appellant Norwest's mortgage was not entitled to first priority in equitable subrogation to the former mortgage held by Summit Bank. Appellants' first assignment of error is overruled.
 III. ASSIGNMENT OF ERROR II: THE TRIAL COURT ERRED IN FINDING THAT THE NECESSARY ELEMENTS OF LACHES ARE NOT PRESENT AS APPLIED TO THE LIEN OF SUMMIT BANK.
Appellants argue that the Summit Bank judgment lien should not have priority over Norwest's mortgage lien because Summit Bank should have brought to Norwest's attention that Summit Bank also had a judgment lien on the property. Appellants assert that Summit Bank's failure to advise Norwest of the existing judgment lien should operate as laches to prevent Summit from obtaining priority over Norwest. This court disagrees.
"Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." Connin v. Bailey (1984), 15 Ohio St.3d 34, 35, quotingSmith v. Smith (1957), 107 Ohio App. 440, 443. Laches is a defense and if the defendant proves the elements of laches, the burden will shift to the plaintiff to explain the unreasonable delay in pursuing his right. Stevensv. Natl. City Bank (1989), 45 Ohio St.3d 276, 284-285, citing Russell v.Fourth Natl. Bank (1921), 102 Ohio St. 248, 268. The elements of laches are:
 conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had knowledge or notice of defendant's conduct and having been afforded an opportunity to institute a suit; (3) lack of knowledge or notice on the part of the defendant that the complainant would assert the right on which he bases his suit; and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant.
Stevens, 45 Ohio St.3d at 285, citing Smith, 168 Ohio St. at 455.
In the instant case, only the fourth element is established, namely that failure of the court to grant relief will injure the appellants. Most especially, appellants cannot prevail on either the element of unreasonable delay by Summit Bank or appellants' lack of knowledge that Summit Bank had a judgment lien that it might seek to enforce. The parties stipulated that Norwest paid off Summit Bank's mortgage at the closing. Appellants argue that when Summit Bank was called to provide the payoff figure to Norwest, Summit should have advised Norwest of the Summit Bank judgment lien on the property. There is no evidence that the Summit Bank employee who provided the mortgage payoff figure was aware or should have been aware that Summit also had a judgement lien on the property.
Furthermore, there is no evidence that Summit Bank had a duty to inform Norwest about the judgment lien, even if that information was available to Summit's mortgage payoff clerk. Clearly, Norwest had conducted a sufficient title search to determine that Summit Bank was a mortgage holder on the property. There was no reason for Summit Bank to assume anything other than that Norwest had thoroughly searched the title to find encumbrances of record, as it had found the Summit Bank mortgage. Appellants have suggested no reason why Summit Bank would advise a prospective mortgage lender of the state of the title, albeit a title which included another encumbrance by Summit Bank.
Finally, it is undisputed that the liens at issue here were matters of public record. Where an encumbrance is a matter of public record, constructive knowledge of the encumbrance is presumed. See Tiller v.Hinton (1985), 19 Ohio St.3d 66. Norwest is deemed to have constructive notice of the Summit Bank judgment lien, which was a matter of record.
Because appellants did not prove the elements of laches, the trial court correctly determined that the defense of laches does not apply to the instant case. Appellants' second assignment of error is meritless, and it is overruled.
 IV.
Having overruled appellants' assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
The Court finds that there were reasonable grounds for these appeals.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellants.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
BATCHELDER, P. J., WHITMORE, J., CONCUR
[1] There was also a federal tax lien in the amount of $14,618.03, which Midland discovered during the title search. That lien was paid off prior to the closing, and is not an issue in this appeal.