OPINION
{¶ 1} This accelerated appeal arises from Painesville Municipal Court. Appellant, Donald Robinson ("Robinson"), appeals the decision of the trial court granting judgment to appellee, Stephen W. Polk, Jr. ("Polk"), in the amount of $9,500, plus interest.
 {¶ 2} As Polk was in the midst of discussions with the Equal Employment Opportunity Commission ("EEOC"), regarding a potential discrimination suit against his employer, an official from the EEOC recommended Polk contact Robinson to provide assistance to him with his claim. Robinson had asserted a number of successful claims of discrimination in the past and lived near Polk. Polk contacted Robinson and the two met several times and had several telephone conversations regarding Polk's discrimination claim. Polk was ultimately successful in his discrimination claim against his former employer, receiving a settlement award of nearly $400,000.
 {¶ 3} During the time the two were preparing for Polk's discrimination case, two checks were written by Polk to Robinson. The first check was in July 1992, for $9,000. The second was in March 1993, for $500. Polk contends that the two checks were short-term loans, whereas Robinson acknowledges receipt of the money but maintains that there was no loan agreement and he owes Polk no repayment of funds.
 {¶ 4} Polk filed a complaint for money damages in Painesville Municipal Court on January 21, 2000. The case was tried before a magistrate on April 11, 2001. Both parties were present and represented by counsel.
 {¶ 5} Polk testified that Robinson did assist him with his discrimination action, but the checks given to Robinson were loans to be repaid. Polk introduced the original checks into evidence at trial. The first check, dated July 9, 1992, was made payable to "Donald N. Robinson" in the amount of $9,000 and contains the following language in the memo line: "Loan — to be paid back by Sept. 30th 1992." The second check, dated March 30, 1993, was made payable to "Donald Robinson" in the amount of $500 and "Loan 60 days" is written in the memo line. At trial, Polk testified that Robinson was with him when both checks were written out and that the checks were given to Robinson to be cashed. Polk also introduced copies of his phone bill from February 1994, which indicated that he contacted Robinson by telephone in order to discuss the loan. Polk also admitted a copy of a letter, dated February 6, 1994, from Polk to Robinson regarding a telephone conversation they had where Robinson assured Polk he was "making provisions to protect the loan." The letter also commented on the fact that Robinson had told Polk, during a phone conversation, that Robinson was putting his home in the name of Beverly Taylor, his girlfriend, to protect himself from creditors. Polk also introduced a copy of a deed from the Lake County Recorder's Office conveying Robinson's property in Painesville to his girlfriend, Beverly Taylor.
 {¶ 6} Robinson testified that Polk offered the money to him after having prevailed in his discrimination action as compensation for the consultations he provided. Robinson further testified that he and Polk were in Polk's car at the time the checks were written out and that Polk took the checks directly into his own bank to cash them for Robinson as Robinson was unable to cash them himself. Robinson also testified that he never saw any writing on the memo line or elsewhere on the checks to indicate that they were loans. Robinson further testified that he had never received the February 6th letter from Polk and that he did convey his property to his long-time girlfriend, Beverly Taylor, but not to avoid paying any creditors or Polk.
 {¶ 7} At the close of evidence, the magistrate requested findings of fact and conclusions of law to be submitted by counsel. On May 11, 2001, the magistrate's findings of fact and conclusions of law and amended decision were filed, granting judgment to Polk in the amount of $9,500, plus interest. Robinson filed objections to the magistrate's decision. On June 5, 2001, the trial court overruled Robinson's objections and entered judgment consistent with the decision of the magistrate. Robinson filed a timely appeal and cites three assignments of error:
 {¶ 8} "[1.] Appellee's claim against appellant is barred by laches, as appellee's seven (7) year delay in presenting his claim caused substantial prejudice to appellant."
 {¶ 9} "[2.] [Appellee's] claim against [appellant] is barred by the statute of limitations."
 {¶ 10} "[3.] The decision of the magistrate and judgment entry granting appellee's judgment in the amount of $9,500.00 against appellant are against the manifest weight of the evidence and must be reversed."
 {¶ 11} In his first assignment of error, Robinson contends that Polk's claim is barred by laches. The checks in question were issued in July 1992, and March 1993. Polk brought his claim in January 2000, approximately seven years after the last check was issued.
 {¶ 12} The Supreme Court of Ohio has set forth the four elements of laches: (1) unreasonable delay or lapse of time in asserting a right, (2) absence of excuse, (3) actual or constructive knowledge of the injury, and (4) prejudice to the other party.[1] A mere lapse in time is not enough to establish prejudice.[2] In order to make a successful claim under the doctrine of laches, "`it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim.'"[3]
 {¶ 13} Robinson argues that Polk's delay in bringing this action has caused prejudice to him in that he was unable to secure copies of the checks as they "are only maintained by the bank for seven years." Thus, evidence showing the wording on the checks at the time of presentation to the bank was unavailable to Robinson at the time of trial. However, the record is devoid of any testimony that Robinson attempted to secure copies of the checks by subpoena or that the bank only maintained copies of checks for seven years. Therefore, Robinson did not demonstrate that he was prejudiced by Polk's delay in filing the lawsuit and, thus, failed to meet the fourth element of a successful claim of laches.
 {¶ 14} Robinson's first assignment of error is without merit.
 {¶ 15} In his second assignment of error, Robinson argues that Polk's claim is barred by the statute of limitations. Robinson argues that, as there was no written loan agreement or contract between the parties, Polk's cause of action was based upon a verbal contract and, thus, pursuant to R.C. 2305.07, the statute of limitations for such a cause of action is six years.
 {¶ 16} R.C. 2305.07, governing contracts not in writing, reads:
 {¶ 17} "Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a contract not in writing, express or implied, or upon a liability created by statute other than a forfeiture or penalty, shall be brought within six years after the cause thereof accrued."
 {¶ 18} Polk contends that the checks themselves meet all of the criteria for a written contract and, as such, are governed by R.C. 2305.06, which provides for a fifteen-year statute of limitations.
 {¶ 19} R.C. 2305.06 reads:
 {¶ 20} "Except as provided in sections 126.301 and 1302.98 of the Revised Code, an action upon a specialty or an agreement, contract, or promise in writing shall be brought within fifteen years after the cause thereof accrued."
 {¶ 21} In his reply brief, Robinson argues that if the court finds that this cause of action is based upon the checks as written instruments, Polk's cause of action is still barred by a six-year statute of limitations pursuant to R.C. 1303.16(A) as the checks are negotiable instruments.
 {¶ 22} R.C. 1303.16 (A) states:
 {¶ 23} "Except as provided in division (E) of this section, an action to enforce the obligation of a party to pay a note payable at a definite time shall be brought within six years after the due date or dates stated in the note or, if a due date is accelerated, within six years after the accelerated due date."
 {¶ 24} Robinson argues that as both checks include definite due dates on their memo lines, a cause of action to enforce each obligation must be brought within six years from that date.
 {¶ 25} The checks in question are negotiable instruments, more specifically, drafts. Moreover, there is no dispute that Polk issued the checks to Robinson, that Robinson endorsed the checks, and that they were presented for payment, either by Polk himself or by Robinson. However, the key issue is the language on the memo line indicating that these were loans. The issue is whether the checks constitute written contracts and, as such, fall under the R.C. 2305.06 fifteen-year statute of limitations.
 {¶ 26} In order to establish the existence of a contract, a party must prove there was an offer, an acceptance, a meeting of the minds, an exchange for consideration, and certainty as to the essential terms of the contract.[4] In order to a contract to be enforceable it must contain all the elements of the bargain.[5]
 {¶ 27} The Tenth District addressed the issue of whether written checks could ever constitute a written contract.[6] In Regina, the plaintiffs argued that checks endorsed and deposited by defendant with the word "loan" written on the upper left-hand corner, constituted a written contract.[7] The Tenth District concluded that the checks, as written, were not written contracts, holding:
 {¶ 28} "Where writing on a check is unclear as to whether the amount payable constitutes a loan to the payee, and supplemental evidence would be required to complete the terms of whatever understanding the parties may have had, it is not a written contract within the meaning of R.C. 2305.06, so as to be governed by a 15 year period of limitation."[8]
 {¶ 29} The instant case can be distinguished from Regina in that the checks as written encompass all of the elements of a contract. Although there was a dispute as to whether the loan language existed on the checks at the time of presentation and a dispute as to whether Robinson actually endorsed the checks himself, the trial court concluded, after judging the credibility of both witnesses and all available evidence, that a loan agreement existed between the parties as evidenced by the written checks. In Regina only the word "loan" was written on the checks. Regarding the checks at issue here, both had definite terms written on the memo lines. The first check set forth a specific due date of September 30, 1992, and the second noted that the loan was due in sixty days from the date on the check. Thus, both checks meet all of the necessary requirements for a written contract and, as such, are governed by the R.C. 2305.06 fifteen-year statute of limitations.
 {¶ 30} Polk testified that the parties discussed the transaction as being a short-term loan to be paid back when Robinson was able. Robinson maintains that a loan never existed at all. The trial court found Robinson's argument that the checks were to be compensation for his consulting services was not persuasive.
 {¶ 31} Robinson's second assignment of error is without merit.
 {¶ 32} In his third assignment of error, Robinson argues that the judgment in favor of Polk was against the manifest weight of the evidence.
 {¶ 33} In determining whether a judgment is against the manifest weight of the evidence, the reviewing court, "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. ***"[9]
 {¶ 34} At trial, Polk introduced evidence in the form of the original checks written to Robinson containing the loan language, as well as a copy of his telephone bill and a letter to Robinson discussing the loan and when it would be repaid. In response, Robinson refuted Polk's testimony regarding the existence of the loan and claimed he never saw the checks, could not get the originals from the bank, and that he never saw any letter from Polk discussing the loan. However, Robinson did not provide any evidence at all in support of his contention that there was no loan agreement and the money he received was compensation for his consulting efforts.
 {¶ 35} The trial court, as finder of fact, noted that, after considering all of the evidence and the credibility of both witnesses, Polk had established that a loan agreement existed between the parties and that Robinson had failed to repay those monies. Robinson has not established that the trial court clearly lost its way and caused a manifest miscarriage of justice.
 {¶ 36} Robinson's third assignment of error is without merit. The holding of the trial court is affirmed.
DONALD R. FORD and DIANE V. GRENDELL, JJ., concur.
[1] State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998),82 Ohio St.3d 235, 244.
[2] Stevens v. Natl. City Bank (1989), 45 Ohio St.3d 276, 285.
[3] Id. at 285, quoting Smith v. Smith (1959), 168 Ohio St. 447, paragraph three of the syllabus.
[4] (Citations omitted.) Tippen v. Mead Corp. (Dec. 15, 2000), 2d Dist. No. 18380, 2000 Ohio App. LEXIS 5826, at *7-8.
[5] Nilavar v. Osborn (1998), 127 Ohio App.3d 1, 13, quoting Mr. MarkCorp. v. Rush, Inc. (1983), 11 Ohio App.3d 167,169.
[6] Regina Apartments v. Village Green (1978), 60 Ohio App.2d 345.
[7] Id. at 347.
[8] Id.
[9] (Citations omitted.) State v. Davis (1988), 49 Ohio App.3d 109,113.