[Cite as *In re Roudebush Trust*, 2019-Ohio-3955.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## CARROLL COUNTY

IN THE MATTER OF:

JAY F. ROUDEBUSH AND BEVERLY J. ROUDEBUSH TRUST

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 CA 0929**

---

Civil Appeal from the
Court of Common Pleas, Probate Division, of Carroll County, Ohio
Case No. 2016 3002

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

**JUDGMENT:**
Reversed and Remanded.

*Atty. Hwa Lumley*, Lumley Law Office, L.L.C., 63 East Main Street, Carrollton, Ohio 44615, for Appellants.

*Atty. Vincent L. Slabaugh*, 209 Bridge Street, P.O. Box 836, Malvern, Ohio 44644, for Appellee.

Dated: September 30, 2019

**WAITE, P.J.**

{¶1} Appellants Beverly J. and Martin Roudebush (collectively referred to as "Appellants") appeal a judgment entered November 19, 2018 in the Carroll County Common Pleas, Probate Division granting Trustee of the Jay F. and Beverly J. Roudebush Trust, Sean R. H. Smith ("Smith"), permission to enter into a settlement agreement concerning Trust property. Appellants argue that Smith ignored his duty to manage the trust for the benefit of its beneficiaries by seeking to enter into a settlement agreement placing restrictions on the future sale of Trust property and imposing a significant monetary obligation on the beneficiaries. For the reasons provided, Appellants' arguments have merit and the judgment of the trial court is reversed. The matter is remanded to the trial court for purposes of a holding a full evidentiary hearing to determine if the parties can reach an appropriate settlement agreement.

<u>Factual and Procedural History</u>

{¶2} Jay F. Roudebush is the father of Beverly J. and Martin Roudebush. In late 1989, Jay transferred the family home to Beverly. Both Jay and Beverly lived in the house. Subsequently, on December 5, 1989, Jay established the "Jay F. Roudebush and Beverly J. Roudebush Trust." The trust agreement was recorded on December 18, 1989. The trust agreement stated that "it is the intent of the parties to provide for the continued beneficial use of said property for Jay F. Roudebush and Beverly J. Roudebush." (Trust Agreement, p. 1.) The parties named Ronald G. Roudebush, (son of Jay and brother of Beverly) as the trustee. The house and an existing oil and gas lease are the only Trust assets. Although a date is not provided, the record reflects that Jay is now deceased. Beverly continues to remain in possession of the house. From the record, it appears that

there are additional Roudebush heirs; however, it is unclear how many of these heirs remain.

{¶3}   The crux of this matter involves the bottom portion of the gravel driveway leading to the house.  According to the neighbor, Appellee Jeffrey Bory, this portion of the Trust property encroaches on his property.  According to Bory, his predecessor in interest informed the Roudebush family that their driveway encroached on the adjacent property, but this predecessor allegedly gave them permission to continue using the driveway.  Bory concedes that when he asked his predecessor to sign an affidavit attesting to these facts, he was refused.  Bory claims that in 2002 he also gave Appellants permission to use the driveway, despite the fact that it encroached on his property.  According to a survey paid for by Bory, while this record does not reveal the exact dimensions of the drive, the bottom portion of the driveway does encroach on the Bory property.

{¶4}   Apparently, Martin moved into the Trust house with Beverly sometime in 2009 and allegedly took actions intended to give the appearance that the encroachment actually belonged to the Trust property.  Shortly thereafter, the relationship between the neighbors deteriorated and Bory's attorney sent a letter to Appellants withdrawing permission to use the land and demanding that the encroachment be removed.  This letter is dated September 5, 2015.

{¶5}   The parties attempted to settle the matter by simply relocating the driveway. However, the parties were unable to agree to a division of the costs.  Each sought an estimate of the cost involved in relocating the driveway entirely to the Trust property. According to Bory, the estimated cost of removing the gravel drive from his property is

between $1,000 and $1,500.  According to Appellants, the estimated cost is between $2,500 and $3,925.

{¶6}   On November 13, 2015, Bory and Germaine Lawless filed a complaint in the Carroll County Common Pleas Court against Appellants.  It is unclear whether Lawless has any rights to the Bory property or merely lives with Bory.  The first count of this complaint sought a declaratory judgment that the encroachment is located on the Bory property.  This claim appears to be asserted against the Trust.  The second and third counts of the complaint, trespass and nuisance, were filed against Beverly and Martin as individuals, however.  The final count of the complaint, assault, was also filed against Martin as an individual.

{¶7}   On December 14, 2015 Appellants filed a counterclaim.  This counterclaim rests on allegations that the Trust has adversely possessed the land at issue.  While the complaint was filed in the general division of common pleas court, because the matter involves a trust, any settlement agreement in this matter must occur in the probate court. For this reason, the record in this matter is not complete.  While the complaint is attached to another document filed in the appellate record, the counterclaim and the motions for summary judgment are not.  The probate court did not have the entire record of the general division proceedings before it, hence, nor does this Court on appeal. Consequently, our review of this matter is hindered.

{¶8}   As the original trustee had passed away, on September 14, 2016, Appellants filed a motion to appoint a successor trustee.  The probate court did appoint a successor trustee, but she resigned not long after.  On January 26, 2017, Appellant filed

a motion to appoint a successor trustee and on February 7, 2017, the court appointed Attorney Sean Smith.

**{¶9}** It appears that at least one of the parties filed a motion for summary judgment in the underlying suit. Again, these motions were filed in the general division and were not made a part of this probate appellate record. It can be gleaned from the record that the general division granted declaratory judgment, ruling that the driveway encroached on Bory's property. However, Appellants' counterclaim alleging adverse possession survived summary judgment. Consequently, although the probate court held that part of the Trust drive sits on the Bory property, it remains possible that Appellants adversely possess the property at issue. It also appears that at some point the nuisance claim against Beverly and Martin and the claim against Martin for assault may have been dismissed.

**{¶10}** On May 4, 2018, Smith filed a motion in probate court on behalf of the Trust to approve a settlement agreement between the parties. Pursuant to the proposed agreement, Bory was to dismiss the trespass claims, filed individually against Beverly and Martin. Bory also agreed that, instead of requiring removal of the portion of the drive encroaching on his property, Bory would grant Beverly a license to continue to use the driveway as it is currently situated. This license is to terminate in the event that the Trust property is sold, transferred, or when Beverly no longer uses the property as her permanent residence. When one of these events does occur, the driveway must be relocated to rest entirely on the Trust property within one year.

**{¶11}** The Trust would agree to dismiss its adverse possession counterclaim and concede that the end of the driveway is located on and encroaches on Bory's property.

The Trust would agree to maintain the encroachment and to allow Bory access to the area in order to maintain other portions of his land. Importantly, the agreement also provides that the Trust would execute a promissory note secured by a mortgage on the Trust property in favor of Bory in the amount of $29,000. The note becomes due when one of the following occurs: (1) the property is transferred out of the Trust, (2) Beverly establishes a permanent residence other than the Trust property, or (3) on termination of the Trust. Annual interest (1.29%) on the note must also be paid by the Trust to Bory while Beverly continues to possess the house.

{¶12} If the Trust elects to relocate the encroachment instead of using the license, the agreement provides that instead of signing a promissory note to Bory, the Trust must enter an agreement with Bory regarding division of the costs to relocate the drive, and must assign the royalties under the existing oil and gas lease to Bory. Currently, Appellants are receiving royalties from this lease. Although there is no evidence as to the amount of royalties Appellants receive, Smith told the court that the Trust received a monthly check for approximately $68. It is unclear whether Appellants are receiving free gas through the lease, which was apparently never part of the evidence in this matter, either on appeal or in the underlying common pleas case. According to Smith, these royalties would be used to pay the interest on the note in the event that Appellants choose not to relocate the encroachment.

{¶13} Appellants filed a motion opposing the settlement agreement, arguing that it would remove several options for beneficial use of the property as provided for in the trust agreement. The trial court held a hearing and granted Smith's motion to approve

the settlement agreement on behalf of the Trust.  It is from this entry that Appellants timely appeal.

ASSIGNMENT OF ERROR

THE PROBATE COURT ERRED IN APPROVING THE SETTLEMENT AGREEMENT AND GRANTING THE TRUSTEE AUTHORITY TO EXECUTE THE PROMISSORY NOTE AND MORTGAGE.

**{¶14}**  Appellants argue that the settlement agreement violates the provision in the trust agreement requiring the trustee to provide for the continued beneficial use of the property.  Appellants argue that continued use of the existing driveway provides only one beneficial use of the land.  The settlement agreement removes any remaining beneficial uses of the land, including the ability to rent the property, sell the land for its full value, and access to the proceeds from the oil and gas royalties.  If the settlement agreement is enforced, Beverly will have no other option than to remain in the house and pay 1.29 percent interest per year to avoid having to pay the full $29,000 note.  Appellants argue that should the litigation be allowed to proceed, at worst, they would have to pay the costs of relocating the driveway and nominal trespass damages if they lose the lawsuit.  At best, the Trust could defeat the entire lawsuit based on its adverse possession claim, which survived summary judgment.

**{¶15}**  In response, Smith argues (on behalf of the Trust) that he analyzed the evidence and the probability of a successful defense and determined that it would be in Beverly's best interest to agree to the settlement.  Smith's entire argument is based on the premise that in order for Beverly to use the property, she must be able to use the

section of the driveway that is situated on the Bory property. Smith contends that the agreement provides a benefit to Beverly, because she will be able to use the driveway as long as she lives in the house, that the Trust lacks sufficient funds to pay for relocation of the driveway, and that the $29,000 note is appropriate compensation for Beverly's continued use of the driveway and the damages for trespass.

**{¶16}** "The approval of a settlement agreement rests in the sound discretion of the trial court." *Duncan v. Hopkins*, 9th Dist. Summit No. 24065, 2008-Ohio-3772 ¶ 14, citing *State ex rel. Republic Servs. of Ohio v. Pike Twp. Bd. of Trustees*, 5th Dist. Stark Nos. 2006 CA 00153, 2006 CA 00172, 2007-Ohio-2086, at ¶ 68; *Meyer v. Meyer*, 9th Dist. Summit No. 21023, 2002-Ohio-5038, at ¶ 9. As such, a trial court's approval of a settlement agreement is reviewed for an abuse of discretion. An abuse of discretion is more than an error in judgment, it requires a finding that the court's decision was unreasonable, arbitrary or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶17}** R.C. 5808.01 provides that: "[u]pon acceptance of a trusteeship, the trustee shall administer the trust in good faith, in accordance with its terms and purposes and the interests of the beneficiaries, and in accordance with Chapters 5801. to 5811. of the Revised Code." While a trustee is provided broad authority, he cannot "take advantage of liberal provisions of a trust instrument to relieve himself from the legal responsibility of a fiduciary under the law." *Biddulph v. Delorenzo*, 8th Dist. Cuyahoga No. 83808, 2004-Ohio-4502, ¶ 27.

**{¶18}** "As a general matter, a trustee is required to exercise the same care, skill and diligence that an ordinarily prudent man would exercise over his own affairs and

Case No. 18 CA 0929

property." *Stevens v. Natl. City Bank*, 45 Ohio St.3d 276, 279, 544 N.E.2d 612 (1989), citing *State v. Guilford*, 15 Ohio 593, 595 (1846); 1 Restatement of the Law 2d, Trusts 379, Section 174 (1959); 5A Bogert, Trusts and Trustees 157, Section 541 (2 Ed.Rev.1978).

{¶19} The narrow question before us is whether Smith's decision to enter into this settlement agreement benefitted the Trust's beneficiaries. Preliminarily, we note that Beverly is the direct beneficiary of the Trust. Her siblings and their children are residual beneficiaries who stand to benefit after disposal of the Trust property.

{¶20} The settlement agreement at issue includes the following provisions: Bory promised to dismiss the trespass claims filed against Beverly and Martin, individually. Bory will grant Beverly a license to continue to use the driveway in its current location. However, the license will terminate in the event that the Trust property is sold, transferred, or if Beverly stops using the house as her permanent residence. When any of these events occur, the Trust or new resident must relocate the driveway onto the Trust property within one year of the event.

{¶21} In return, the Trust agreed to dismiss its adverse possession claim and concede that some portion of the end of the driveway is located on Bory's property. The Trust will allow Bory access to the drive in order to maintain other portions of his property. The final component of the agreement creates an option. Option one requires the Trust to execute a promissory note in the amount of $29,000 secured by a mortgage on the Trust property in favor of Bory. The note becomes due on one of the following events: (1) if the property is transferred out of the Trust, (2) if Beverly stops using the Trust property as her permanent residence, or (3) on termination of the Trust. Annual interest

(1.29%) on the note must be paid by the Trust to Bory while Beverly continues to possess the house. The second option allows the Trust to avoid mortgaging the property to secure a note and instead pay the costs of relocating the driveway and assign to Bory the royalties under an existing oil and gas lease.

{¶22} Although it is Appellant's duty to develop and provide this Court with a complete record, we again note that because most of the facts necessary for a complete record were provided in the common pleas general division case and not made part of this trial court's file, the record in this matter is quite limited. We can glean, however, that the settlement agreement is disproportionate on its face and does not reasonably benefit any beneficiary.

{¶23} First and foremost, Appellee's main argument rests on the incorrect assertion that Beverly possesses a life estate in the house. It is clear from the trust agreement that this is not the case. There are two provisions of the trust agreement that are relevant to this issue. First, the agreement provides that "IT IS THEREFORE AGREED AND RESOLVED that said property shall be held by said Trustee for the remainder of the natural lifetime of Jay F. Roudebush. Thereafter, the Trustee may continue to hold said property for the beneficial use of Beverly J. Roudebush." (Trust Agreement, p. 1.) Second, the agreement stated: "Upon the death of Jay F. Roudebush, [the trustee] may elect to sell said property and is hereby authorized to convey good title by execution of such deeds of conveyance as are necessary." (Trust Agreement, p. 1.)

{¶24} The first provision clearly provides Jay with a life estate. The agreement expressly forbids sale of the property during Jay's lifetime. However, the same is not true in regard to Beverly. The first and second provisions expressly permit the sale of the

Case No. 18 CA 0929

house during Beverly's lifetime if the trustee, in his discretion, believes that such a sale is in the best interests of the beneficiaries. This is evident by the phrases "*may continue to hold* said property for the beneficial use of Beverly J. Roudebush" and "[u]pon the death of Jay F. Roudebush, [the trustee] may elect to sell said property." Had the agreement intended to create a life estate in favor of Beverly, it would have used the same language used to create a life estate for Jay and would not have expressly permitted the sale of the property on Jay's death.

**{¶25}** Appellee also erroneously contends that Beverly's continued possession of the property is the sole beneficial use of the property. Ohio law recognizes that "[a] common idiom describes property as a 'bundle of sticks' — a collection of individual rights which, in certain combinations, constitute property." *Dispatch Printing Co. v. Recovery Ltd. Partnership*, 10th Dist. Franklin No. 14AP-473, 2015-Ohio-381, 28 N.E.3d 562, ¶ 51, citing *United States v. Craft*, 535 U.S. 274, 278, 122 S.Ct. 1414, 152 L.Ed.2d 437 (2002). Although the settlement agreement allows Beverly to use the driveway, this use represents only one stick. The settlement agreement prevents Beverly and the remaining heirs from renting the property, selling the property for its full value, and either burdens them with a $29,000 note plus interest or divests them of gas and oil royalties.

**{¶26}** At oral argument, the parties agreed that the house is worth approximately $60,000. Thus, the note discussed in the settlement agreement represents almost half the value of the property. An agreement that takes away half the value of the property and ignores other viable options, such as a lien on the house sufficient to cover the cost of relocating the driveway or simply selling the house for its full value is clearly disproportionate and unfair. The fact that Appellants may avoid the note and opt to

relocate the driveway is not an acceptable option, as Appellants would also be required to sign over their royalties from an existing and producing oil and gas lease in that event.

**{¶27}** Crucially, there is nothing in this record that provides an explanation as to how the parties arrived at the $29,000 figure. At oral argument, Appellee stated that it represents the fees incurred by Bory during this litigation, including his survey and his attorney fees. However, the established law in Ohio provides that "a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Spires v. Oxford Mining Co, L.L.C.,* 2018-Ohio-2769, 116 N.E.3d 717 (7th Dist.), ¶ 46, citing *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, 906 N.E.2d 396, ¶ 7. The sole exception to this rule involves punitive damages in proceedings involving fraud, insult, or malice. *Id.,* citing *Columbus Fin., Inc. v. Howard,* 42 Ohio St.2d 178, 183, 327 N.E.2d 654 (1975); *Roberts v. Mason,* 10 Ohio St. 277 (1859). Appellee also claims that this figure represents compensation for dismissing the individual trespass claims filed against Beverly and Martin. However, the claims raised against an individual are completely irrelevant to an action asserted against a trust. Beverly and Martin may individually be responsible for these claims, but as they were named individually and not in any capacity acting on behalf of the Trust, the Trust is not responsible for payment of any settlement of these claims, and they cannot properly be calculated into any such settlement.

**{¶28}** Additionally, the parties alluded to a possible conflict of interest stemming from counsel's continued representation of the Trust after representing both the Trust and the individual claims of Beverly and Martin at the onset of the case. It appears that Beverly and Martin now have interests that may conflict with the Trust's interest. It

Case No. 18 CA 0929

appears these were not taken into consideration when approving this proposed settlement.

**{¶29}** This settlement agreement appears to be disproportionate on its face and does not appear to serve to benefit any Trust beneficiary. The record in this matter provides no evidence that would support approval of the proposed settlement agreement. As such, Appellants' assignment of error has merit and is sustained.

### Conclusion

**{¶30}** Appellants argue that any decision to settle a lawsuit against the Trust must ultimately serve the Trust's purpose and be of benefit to the beneficiaries. This proposed settlement does not, on its face, comply with these requirements and this record provides no support. For the reasons provided, Appellants' arguments have merit and the judgment of the trial court, probate division, is reversed. This matter is remanded to the trial court for purposes of a holding a full evidentiary hearing to determine if the parties can reach an appropriate settlement agreement.

Donofrio, J., concurs.

Robb, J., concurs.

Case No. 18 CA 0929

---

For the reasons stated in the Opinion rendered herein, the assignment of error is sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas, Probate Division, of Carroll County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**