OPINION
This is a consolidated administrative appeal. Appellants, Donald Robert Sutton ("Donald Sutton"), Robert C. Sutton, ("Robert Sutton"), and Kinsman Pharmacy, Inc. ("Kinsman Pharmacy"), appeal from a final judgment of the Trumbull County Court of Common Pleas affirming the decision of appellee, the Ohio State Board of Pharmacy, to indefinitely suspend Donald Sutton's license to practice pharmacy, to permanently revoke Robert Sutton's license to practice pharmacy, and to terminate Kinsman Pharmacy's terminal distributor license. For the reasons that follow, we affirm the judgment of the trial court.
Donald and Robert Sutton are both pharmacists licensed to practice in the state of Ohio. Kinsman Pharmacy, which is owned and operated by the Suttons, is a licensed terminal distributor of dangerous drugs pursuant to R.C. 4729.55.
The record shows that on October 7, 1999, appellee issued a notice of opportunity for hearing to each appellant. In the notices, appellee claimed that between the years 1993 and 1997, appellants had violated numerous sections of the Ohio Revised Code and Ohio Adm. Code Chapter 4729. The alleged violations included, inter alia, failure to record required information when dispensing prescriptions, failure to preserve prescriptions on file, overcharging patients, intentionally making and/or knowingly possessing false or forged prescriptions, including dangerous drugs, failing to perform prospective drug utilization review and patient counseling, selling a controlled substance in an amount equal to or exceeding the bulk amount, but less than three times that amount, entering a false address into a patient profile during an inspection, and obstructing an agent in the performance of his lawful duties.
Additional violations against Kinsman Pharmacy and Robert Sutton included the failure to do the following; supervise dangerous drugs; properly execute controlled substance order forms; keep a complete and accurate record of all controlled substances; keep a complete and accurate record of all controlled substances after being warned; keep accurate records of all exempt drugs; record required information when dispensing prescriptions after being warned; provide previously requested documents; and file copies of original prescriptions.
On October 25, 1999, appellants' counsel requested a hearing, which appellee conducted over two days in May 2000. Although appellants did not attend, they were represented by counsel. During the hearing, both the state and appellants' attorney introduced exhibits into the record, and appellee heard testimony from two witnesses, Agent George Pavlich ("Agent Pavlich") and Agent David Gallagher, who were involved in the investigation of appellants.
Effective June 14, 2000, appellee issued three separate orders setting forth its findings of fact and conclusions of law for each appellant. As to Donald and Robert Sutton, appellee concluded that, based on its factual findings, they were guilty of dishonesty and unprofessional conduct in the practice of pharmacy as provided in R.C. 4729.16(A)(2). Appellee also stated that the two men were guilty of willfully violating, conspiring to violate, attempting to violate, or aiding and abetting the violation of provisions of R.C. Chapters 2925, 3719, or 4729, as provided in R.C. 4729.16(A)(5). Accordingly, appellee indefinitely suspended Donald Sutton's license to practice pharmacy, allowing him to petition for reinstatement upon the completion of certain conditions. As for Robert Sutton, appellee permanently revoked his license to practice pharmacy.
With respect to Kinsman Pharmacy, appellee concluded that the pharmacy had violated the following: R.C. 4729.57(A)(2); provisions of R.C. Chapter 4729, as provided in R.C. 4729.57(A)(3); provisions of the federal narcotics law or R.C. Chapters 4729, 2925, and 3719, as provided in R.C. 4729.57(A)(5); and R.C. 4729.55, as provided in R.C. 4729.57(A)(7). As a result, appellee revoked the terminal distributor license held by Kinsman Pharmacy.
On June 16, 2000, each appellant filed a timely administrative appeal with the Trumbull County Court of Common Pleas. The common pleas court ordered the consolidation of appellants' appeals and suspended appellee's orders pending the outcome of the administrative appeals.
Appellants filed their appellate brief with the common pleas court on October 2, 2000. As grounds for their appeal, appellants maintained that appellee's orders were barred by the doctrine of laches because most of the alleged charges occurred in 1994 and 1995. In the alternative, appellants requested a rehearing before appellee because they did not receive a fair and impartial hearing. Appellants believed that the witnesses were prejudiced and biased in their testimony, and that appellee did not have the opportunity to observe their demeanor and weigh their credibility since they were advised not to attend the hearing.
In response, appellee argued that there was an abundance of evidence in the record to support its factual findings and conclusions. As to appellants' laches argument, appellee maintained that the doctrine cannot be imputed to the state and that it is not a defense to a suit by the government to enforce a public right or to protect a public interest. Appellee also claimed that appellants failed to fully cooperate in the investigation and that it was their decision not to attend the hearing even though they received proper notice. Moreover, appellants were represented by counsel who cross-examined witnesses and introduced exhibits, including signed statements by appellants Donald and Robert Sutton.
Appellants filed a reply brief in which they argued that there was no intervening justification for any delay in the investigation of the alleged violations. They further added that, during the time the alleged violations occurred, they had submitted their annual license renewal applications to appellee, and each year the licenses were renewed.
On March 6, 2001, the common pleas court filed three separate judgment entries affirming appellee's decisions and dismissing appellants' administrative appeals. Appellants subsequently filed a timely notice of appeal with this court. They now assert two assignments of error for our consideration:
 "[1.] The lower court erred in not finding the pharmacy board orders were barred by the doctrine of laches.
 "[2.] The lower court abused its discretion in finding the orders of the pharmacy board was [sic] supported by reliable, probative, and substantial evidence."
Before addressing the merits of appellants' assignments of error, we feel compelled to make the following observation; appellants' brief does not comply with App.R. 16. For example, App.R. 16(A)(6) requires that the statement of facts in an appellate brief contain appropriate references to the record. However, appellants' statement of facts does not contain references to any parts of the record. Additionally, appellants fail to cite to any authority to support their second assignment of error. Such omissions authorize this court to either strike appellants' brief or suasponte dismiss their appeal for failure to comply with the Ohio Rules of Appellate Procedure. Gregg v. Gregg (Nov. 21, 1997), Portage App. No. 96-P-0263, unreported, 1997 Ohio App. LEXIS 5241, at 8. In the interest of justice, however, we will proceed with the merits of appellants' appeal.
In their first assignment of error, appellants contend that appellee's orders are barred by the doctrine of laches. Specifically, they maintain that while the "notice of opportunity for hearing" is dated October 7, 1999, there was an unreasonable delay because the investigation began as early as 1993, and there is no excuse for the subsequent delay because the entire process was within appellee's control. Appellants also assert that they were prejudiced by the delay because they received their renewed licenses from 1996 through 2001 even though appellee was in the process of building a case against them.
The equitable doctrine of laches involves an omission by a party to assert a right for an unreasonable and unexplained length of time under circumstances that materially prejudice an opposing party. State ex rel.Eaton Corp. v. Indus. Comm. (1997), 80 Ohio St.3d 352, 356, quotingConnin v. Bailey (1984), 15 Ohio St.3d 34, 35-36. The elements of laches include: "(1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) knowledge, actual or constructive, of the injury or wrong, and (4) prejudice to the other party." State ex rel. Mallory v. Pub. Emp. Retirement Bd. (1998),82 Ohio St.3d 235, 244.
However, prejudice will not be inferred from the mere lapse of time in asserting a right. State ex rel. Scioto Cty. Child Support EnforcementAgency v. Gardner (1996), 113 Ohio App.3d 46, 57. Instead, to successfully invoke the equitable doctrine of laches, the party for whose benefit the doctrine will operate must show that he has been materially prejudiced by the delay of the opposing party in asserting his claim.Stevens v. Natl. City Bank (1989), 45 Ohio St.3d 276, 285. This court has recognized that there are two types of material prejudice which necessitate the application of laches: (1) the loss of evidence helpful to a defendant's case; or (2) a change in the defendant's position that would not have occurred had the plaintiff not delayed in asserting her rights. State ex rel. Donovan v. Zajac (1997), 125 Ohio App.3d 245, 250.
Nevertheless, in the absence of a statute to the contrary, the equitable doctrine of laches is generally not a defense to a suit by the government to enforce a public right or protect a public interest. OhioState Bd. of Pharmacy v. Frantz (1990), 51 Ohio St.3d 143,146. The reasoning behind the principle that laches is not imputable to the state is based upon the public policy in enforcing the law and protecting the public interest. Id. Put another way, to impute laches onto the government would be to erroneously impede the government in the exercise of its duty to enforce the law and protect the public interest. Id.
Here, appellee is an agency of the state of Ohio. In re Ghali (1992),83 Ohio App.3d 460, 467. R.C. 2743.01(A) defines "state" as the state of Ohio, including, but not limited to, inter alia, all boards. If appellee has information that there is a violation of R.C. 4729.51 through R.C.4729.62, it must investigate the matter, and upon probable cause, file a complaint for prosecution. R.C. 4729.63. The attorney general, prosecuting attorney, or city law director to whom the board reports any violations must then institute the appropriate proceedings for prosecution. Id.
In the case sub judice, there is some concern by this court as to the lapse of time that is involved. However, as stated above, laches is generally not a defense to a suit by the state to enforce a public right or protect a public interest.
Even assuming arguendo that the doctrine of laches is applicable to the instant case, appellants do not argue that they suffered a loss of evidence helpful to their case or that a change in their position would not have occurred had the board not delayed in asserting its rights. Rather, appellants assert that they were prejudiced because they were receiving their renewed licenses from 1996 through 2001, and that they continued to live their lifestyle, practice pharmacy, provide for their families, and maintain their reputation in the community while appellee was building a case against them.
Although, there was a lapse of approximately two and a half years between the last alleged violation and the issuance of the "notice of opportunity for hearing," prejudice will not be inferred from the mere lapse of time. Furthermore, many of the charges arose from documents already in appellants' possession. Thus, they clearly had access to much of the evidence that was used against them. Gardner, supra. Because appellants have failed to demonstrate "material prejudice," their first assignment of error is without merit.
In assignment of error two, appellants argue that the common pleas court abused its discretion in determining that appellee's orders were supported by reliable, probative, and substantial evidence. Specifically, they maintain that the witnesses were biased, and that appellee did not have an opportunity to observe appellants' demeanor and weigh their credibility because they were not present during the hearing.
In an appeal from an administrative agency's order pursuant to R.C119.12, the standard of review for an appellate court is limited:
 "`In an appeal from [an administrative agency's] order, a reviewing trial court is bound to uphold the order if it is supported by reliable, probative, and substantial evidence, and is in accordance with law. * * * The appellate court's review is even more limited than that of the trial court. While it is incumbent on the trial court to examine the evidence, this is not a function of the appellate court. The appellate court is to determine only if the trial court has abused its discretion, i.e., being not merely an error of judgment, but perversity of will, passion, prejudice, partiality, or moral delinquency. Absent an abuse of discretion on the part of the trial court, a court of appeals may not substitute its judgment for those of the [administrative agency] or a trial court. Instead, the appellate court must affirm the trial court's judgment.'" (Citations omitted and emphasis added.) Mowery v. Ohio State Bd. of Pharmacy (Sept. 30, 1997), Geauga App. No. 96-G-2005, unreported, 1997 Ohio App. LEXIS 4414, at 6-7, quoting Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
After examining the exhibits and the transcript of the hearing, there is no indication that the common pleas court abused its discretion in upholding appellee's orders. As stated above, the common pleas court was bound to uphold appellee's orders if they were supported by reliable, probative, and substantial evidence and were in accordance with the law. In making this determination, the common pleas court was required to give due deference to the administrative resolution of evidentiary conflicts as appellee was in a position to observe the demeanor and weigh the credibility of the witnesses.
In particular, Agent Pavlich testified that, upon conducting the first inspection on May 2, 1994, he issued "pink sheets" for certain compliance concerns. Agent Pavlich described the circumstances surrounding the follow-up inspection on May 21, 1996. He also testified to the events involving the two undercover officers, posing as patients/customers, and described instances of unauthorized refills and overcharging patients. Agent Pavlich further indicated that appellants' responses to certain allegations were false.
The state's exhibits included, among other things, the May 2, 1994 inspection report, the May 21, 1996 follow-up inspection report, and statements from various doctors or their office managers indicating that there were no authorized refills for certain patients, including one case where a patient was dispensed 4,866 tablets above those that were authorized. On the other hand, appellants' exhibits included numerous statements by patients/customers, physicians, and other prominent individuals commending and praising appellants for their care and interest in the community. Appellants' exhibits also included responses by Donald and Robert Sutton denying the allegations.
As stated previously, this court may not simply substitute its judgment in place of the judgment of the common pleas court. Rather, we may only determine if the court abused its discretion in upholding appellee's orders. Upon examination of the record, we conclude that appellee's orders were supported by reliable, probative, and substantial evidence and are in accordance with the law. Thus, the common pleas court was bound to uphold appellee's orders, and did not abuse its discretion in doing so.
Moreover, there is no merit to appellants' argument that appellee did not have an opportunity to observe their demeanor and weigh their credibility. On October 7, 1999, the board issued a "notice of opportunity for hearing" to each appellant, and on October 25, 1999, appellants' counsel requested a hearing. Such facts demonstrate that appellants had adequate notice of the hearing and were aware of the proceedings.[1] Appellants' second assignment of error is not well-taken.
Based on the foregoing analysis, appellants' two assignments of error are without merit. The judgment of the common pleas court, therefore, is affirmed.
FORD, P.J., NADER, J., concur.
[1] Importantly, appellants are not denying that they had notice; instead, they are essentially arguing that they received bad legal advice. Unfortunately for appellants, that is not an issue for appellate review.